Annette THOMAS *v.* STATE of Arkansas

CR 92-412                                     847 S.W.2d 695

Supreme Court of Arkansas
Opinion delivered February 22, 1993

*Gibson Law Office*, by: *Charles S. Gibson* and *C.S. "Chuck" Gibson II*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Senior Asst. Att'y Gen., for appellee.

Tom Glaze, Justice. Appellant, Annette Thomas, was convicted by a jury of being an accomplice to first degree murder of Julia Golden and sentenced to life imprisonment. The state's case showed that Thomas had a female lover named Jody Matthews who became jealous of Thomas's relationship with Golden. The theory of the state's case was that Thomas and Matthews went to Golden's apartment in the early hours of September 24, 1989, because Thomas wanted Golden to explain that she and Golden were not having an affair. Based upon an oral statement Thomas purportedly gave Officer Tim Osborne after Golden's murder, the state asserted at trial that Matthews disbelieved Golden's explanation, and in a jealous rage, Matthews pulled a knife and stabbed and slashed Golden to death. Thomas's statement further reflected that, during this attack, Thomas tried to pull Matthews off of Golden. However, the state offered autopsy evidence showing Golden's wounds included ones caused by an object like an ice pick. An ice pick belonging to Thomas was ultimately recovered from her car. Based on this evidence along with a luminol test which indicated the ice pick had blood on it, the state theorized Thomas actually assisted Matthews in her attack on Golden.

At trial, Thomas raised a number of objections and now argues four of them on appeal. She argues the trial court erred in (1) admitting the state's luminol tests, (2) refusing her the right to introduce evidence on cross-examination to impeach an officer's credibility, (3) refusing to grant Thomas's directed verdict motions and (4) instructing the jury on accomplice liability. We find merit in Thomas's luminol test argument, but we first address her directed verdict argument because it involves a challenge to the sufficiency of evidence which must be considered prior to a

review of trial errors. *Lukach* v. *State*, 310 Ark. 119, 835 S.W.2d 852 (1992).

The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, whether direct or circumstantial. *Moore* v. *State*, 297 Ark. 296, 761 S.W.2d 894 (1988). Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Lukach*, 310 Ark. 119, 835 S.W.2d 852. In determining the sufficiency of the evidence, we need only ascertain that evidence most favorable to appellee, and it is permissible to consider only that testimony which supports the verdict of guilty.

Here, as previously mentioned, Thomas was charged and tried as an accomplice to first degree murder. In this respect, she allegedly was the accomplice of Jody Matthews. Under Ark. Code Ann. § 5-2-403 (1987), an accomplice is defined as follows:

> (a) A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, he:
>
> (1) Solicits, advises, encourages, or coerces the other person to commit it; or
>
> (2) Aids, agrees to aid, or attempts to aid the other person in planning or committing it; or
>
> (3) Having a legal duty to prevent the commission of the offense, fails to make proper effort to do so.

So long as a defendant renders the requisite aid or encouragement to the principal with regard to the offense at issue, the defendant is an accomplice even though the defendant may have rendered the encouragement or aid reluctantly. *See Sumlin* v. *State*, 266 Ark. 709, 722, 587 S.W.2d 572, 578 (1979). In addition, a defendant can be an accomplice to murder even though the defendant's participation in the murder is, compared to that of the principal, relatively passive. *See Henry* v. *State*, 278 Ark. 478, 486-87, 647 S.W.2d 419, 424, *cert. denied*, 464 U.S. 835 (1983). Finally, the presence of an accused in the proximity of a crime, opportunity and association with a person involved in the crime in a manner suggestive of joint participation are relevant

facts in determining the connection of an accomplice with the crime. *Redman* v. *State*, 265 Ark. 774, 580 S.W.2d 945 (1979).

The state presented evidence supporting its theory that Thomas had a lover's relationship with Matthews and that, as a result of a jealous rage, on the early morning of September 24, 1989, Matthews stabbed Golden to death in Thomas's presence. The state's case largely relied on an oral statement that Thomas purportedly gave to Officer Osborne, who investigated Golden's murder, but Thomas's sister and brother-in-law, who resided across from Golden's apartment, confirmed having seen the presence of Thomas's car outside Golden's apartment complex during the early morning hours on the day Golden was killed.

The state also offered evidence showing that some of Golden's wounds were the result of an ice pick, and that, three days after Golden's murder, the police discovered an ice pick in Thomas's car. While Thomas explained she had the ice pick in her car for self protection after Golden's death, Chief Harris testified that, during his investigation, he asked about the ice pick used in Golden's slaying, and Thomas said that Matthews had possessed the ice pick. When Harris asked where the ice pick was now, Thomas said, "Y'all had it," thereby implying that the ice pick used in stabbing Golden was the one the police retrieved from Thomas's car. Officer Osborne related similar testimony. Osborne further stated that Thomas later said that she had lied about the ice pick, and she also recanted her earlier oral statement in its entirety, by claiming she knew nothing about the ice pick and denied being present when Golden was slain. At trial, Thomas maintained her story that she was not present when the murder occurred. This court, of course, has often stated that false and improbable statements explaining suspicious circumstances are admissible as proof of guilt. *Bennett* v. *State*, 297 Ark. 115, 754 S.W.2d 799 (1988); *Surridge* v. *State*, 279 Ark. 183, 650 S.W.2d 561 (1983).

Also significant to its case, the state introduced the results from luminol testing indicating that blood appeared on the ice pick found in Thomas's car. When considering all of the foregoing evidence, a jury could conclude that Thomas jointly participated with Matthews in Golden's murder, at least by furnishing the ice pick used by Matthews in her brutal slaying of

Golden even though the ice pick, itself, was shown only to have produced non-lethal wounds to Golden's body.

We turn now to the point that gives us the most concern, namely, whether the trial court erred in failing to either (1) exclude the luminol test results conducted on the ice pick found in Thomas's car or (2) grant a continuance so Thomas could sufficiently rebut those results. This issue arose after the trial court ruled at least once prior to trial that the state could not introduce the luminol test results at trial.

At a suppression hearing held on March 13, 1991, the defense asked that the state not be able to mention the ice pick found in Thomas's car because the state had lost or misplaced the ice pick. The court denied Thomas's request. Sometime later, apparently shortly before trial in August of 1991, it became known that Officer Gilbert had the ice pick and he had sent it to the crime laboratory where Donald Smith, an expert, conducted a luminol test. Smith found the ice pick bore a speck of matter that tested positive as blood. Smith could not discern whether the blood was animal or human. This information was immediately given the prosecutor who in turn informed Thomas's counsel of this new evidence. On August 29, 1991, counsel for the state and Thomas were selecting the jury, and during a break, the state asked the trial court to rule the luminol test results admissible, but the court refused, stating the defense was not given time to procure an expert to rebut the state's test. The state then asked to nol pros the case, but it later withdrew its motion. Instead, the state on the day of trial, August 30, 1991, chose to make its record on the luminol admissibility issue after the parties completed their jury selection.

The state put on Officers Gilbert and Osborne, Investigator John McCord and Donald Smith who testified that, once the ice pick was located, it was their "impression" that Thomas's counsel wanted this luminol test conducted. Thomas's counsel denied that he had joined in such a request and pointed out that the crime lab's form showed the requesting agency was the prosecuting attorney. The trial court reversed his prior ruling, finding that Thomas's counsel had joined with the state in requesting the test be conducted. Regardless of the correctness of the trial court's finding, the record is clear that Thomas's counsel never indicated

he would agree to the admissibility of the results of the luminol test, nor did he agree to forego any challenge to the reliability of such a test. While there is no indication that the state intentionally withheld the ice pick or delayed testing of it, we have held that information requested by the defendant in a discovery motion must be forwarded in sufficient time to permit beneficial use of it. *Lewis* v. *State*, 286 Ark. 372, 691 S.W.2d 864 (1985).

Here, Thomas had filed a continuing discovery request that sufficiently covered scientific test results such as the ones obtained by the state in this case. In *Lewis*, we held that, when the state fails to comply with such a discovery request, the court may order the undisclosed evidence excluded, grant a continuance, or in some instances a recess, or enter such other order as it deems proper under the circumstances. In *Earl* v. *State*, 272 Ark. 5, 612 S.W.2d 98 (1981), this court concluded that, if the court's discovery rules are to be meaningful, the rules must be complied with where there has been a timely request, there is no finding of compliance by the state and there is prejudice to the defense.

In the present case, Thomas's counsel made a timely request for all scientific test results and actually received results from a serology test which was taken before the luminol test and which indicated no blood shown on the ice pick. The state's luminol test results obviously impacted on Thomas's serology test results that she intended to introduce. Because the trial court on the day of trial reversed its earlier ruling so as to allow the state to admit the luminol test results into evidence, Thomas's counsel had no time to obtain an expert in an effort to rebut the state's evidence.

The importance of the trial court's new ruling is reflected in the trial court's remarks offering to assist Thomas in obtaining an expert, saying, "We'll see if we can get some independent test," ". . . we're going to try to get you an expert," . . . we'll try to get you somebody [counsel]." No expert was forthcoming. And while the state on appeal suggests Thomas's counsel may have waived his right to such an expert because he failed to show he made any effort to do so, we believe the record better suggests that neither the trial court, prosecutor nor Thomas's counsel could locate a luminol test expert on such short notice. After the trial court ruled to admit the test results, the trial commenced immediately thereafter. Thomas's counsel simply had no time to obtain an

expert.

■ Whether Thomas was prejudiced by the trial court's refusal to grant her request for a continuance after its decision to admit the luminol results is evident from the state's announced intention to nol pros its case against Thomas when the trial court had earlier ruled the luminol results inadmissible. Aside from the prosecutor's earlier request to nol pros, one need only review the evidence hereinabove to realize that the ice pick and luminol results are key pieces of evidence on which the state's case depends to show Thomas was Matthews' accomplice in Golden's murder. Thomas's counsel had no time to make beneficial use of the luminol results given him by the state, nor did he have the opportunity to obtain an expert to review those results. Because the state failed to comply with the trial court's discovery rules and the trial court erred in failing to take steps to remedy the state's noncompliance, we must reverse and remand this case for a new trial.

Because we have already discussed the state's evidence that we believe supported the state's theory that Thomas was an accomplice in the first degree murder of Golden, we need not discuss further Thomas's argument that the trial court erred in instructing the jury concerning Thomas's status as an accomplice. Neither is it necessary to address Thomas's argument that the trial court erred in refusing Thomas's use of extrinsic evidence to impeach Officer Osborne's testimony on cross-examination, since such evidentiary issue is unlikely to arise again at any retrial of this matter.[1]

For the reasons above, we reverse and remand.

---

[1] Thomas argues that she never intended to attack Officer Osburne's credibility on cross-examination, but did so only after Osborne volunteered that he had never done anything in the past for people to think he would lie.