Vernon WINTERS *v.* STATE of Arkansas

CA CR 92-14                                         848 S.W.2d 441

Court of Appeals of Arkansas
Division II
Opinion delivered March 10, 1993

*Chet Dunlap*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

JAMES R. COOPER, Judge. The appellant in this criminal case was convicted of burglary and theft of property and was sentenced to fifteen years on each count to run consecutively for a

total of thirty years in the Arkansas Department of Correction. On appeal, the appellant contends that there was insufficient evidence to support the conviction and that the trial court erred by not finding as a matter of law that the appellant could not be found guilty of burglary because the State did not prove that the buildings which were entered were occupiable structures.

■ Pursuant to *Harris* v. *State*, 284 Ark. 247, 681 S.W.2d 334 (1984), when there is a challenge to the sufficiency of the evidence, we review that point before considering other arguments. On appeal, we review the evidence in the light most favorable to the appellee and affirm if the verdict is supported by substantial evidence. *Larue* v. *State*, 34 Ark. App. 131, 806 S.W.2d 35 (1991). Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resort to speculation or conjecture. *Kendrick* v. *State*, 37 Ark. App. 95, 823 S.W.2d 931 (1992). In determining whether there is substantial evidence to support the jury's verdict, it is permissible to consider only the testimony that tends to support the verdict of guilt. *Franklin* v. *State*, 311 Ark. 601, 845 S.W.2d 525 (1993).

Burglary is committed when a person enters or remains unlawfully in an occupiable structure of another person with the purpose of committing therein any offense punishable by imprisonment. Ark. Code Ann. § 5-39-201 (1987). A person commits theft of property if he knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another person, with the purpose of depriving the owner thereof. Ark. Code Ann. § 5-36-103(a) (Supp. 1991).

Here, the evidence, when viewed in the light most favorable to the State, discloses that on the morning of February 18, 1991, Jim Wyse arrived at work and discovered that a supply room had been broken into at the Craighead Farmers Co-op in Bay, Arkansas, where he worked as branch manager. Upon further inspection, he discovered that several large tractor tires and wheels were missing from the small supply room and from another storage building on the premises. The lock on the supply room's gate had been forcibly removed. Mr. Wyse identified some of the tires taken as Armstrong rice and cane tires and estimated the total value to the tires taken at $4,000.00. Several of the tires

were later found behind a cemetery in Lunsford, Arkansas, which is five or six miles from Bay.

Kenneth Walker, Chief of Police in Bay, testified that around 8:30 p.m. on Sunday, February 17, he circled the Co-op premises while on patrol. He stated that he noticed a set of tire tracks leading to the large storage building, but that he did not see a vehicle.

Mr. Purvis DeWayne Carr, an employee of Procter Tire Company, testified that on the evening of February 17, on his way to an 8:00 p.m. meeting, he noticed a tan or gold Chevrolet pickup driving slowly. He stated that the truck had four rear farm tires in the bed. Mr. Carr was able to identify the tires in the back as being new Armstrong rice and cane tires. Mr. Carr also noticed that the truck did not have a license plate and had three trailer hitch balls on the rear bumper. Mr. Carr stated that he was not able to identify the driver nor did he know if there were any passengers.

The next day, Chief Walker identified the appellant's truck as a suspect vehicle based upon the information given to him by Mr. Carr. The appellant agreed to bring his truck to the police station and Chief Walker testified that when he questioned the appellant regarding the theft of the tires, the appellant gave him conflicting statements. The appellant first stated that he had never dealt in tractor tires, but after rubber marks in the back of his truck were pointed out by Chief Walker, he stated that he did regularly haul tractor tires for his father. Chief Walker noticed that the rubber marks appeared to be fresh since they were soft and unfaded. That afternoon, Mr. Carr identified the appellant's truck at the police station as the one he had seen carrying the tires on the previous night.

The appellant gave Chief Walker the names of two alibi witnesses, Brenda Ratliff and Sandy Jones. Ms. Jones testified that on the afternoon of February 17, 1991, the appellant, Raymond Warden, and a woman named Donna came to the apartment that Ms. Jones shared with Brenda Ratliff. The appellant and Mr. Warden later drove Ms. Jones and Donna to a club around 6:00 or 7:00 p.m., and left them there. Ms. Jones stated that she became very intoxicated and did not recall seeing appellant or Mr. Warden again that evening. Ms. Jones testified

that the appellant asked her to state that he had been with her all night on February 17. She initially told the police that she had been with the appellant but later changed her statement after receiving threats from the appellant and Mr. Warden. Ms. Jones also testified that Mr. Warden had offered her money to keep her mouth shut.

Brenda Ratliff testified that around 6:00 p.m. on the evening of February 17, the appellant, Mr. Warden, Donna, and Arlon Dale Ingram arrived at her apartment around 6:00 p.m. in the appellant's truck. She stated that she did not go to the club with the others and that sometime after midnight, Ms. Jones, Mr. Warden, Donna, and the appellant returned to her apartment. She further testified that the appellant subsequently told her that he "did what they said I did" and wanted her to state that he had been at her apartment all evening. When she inquired about the money and the tires, the appellant stated he "couldn't touch that." She stated that she was present when Mr. Warden offered Ms. Jones money to keep quiet and that she suggested Ms. Jones get the money up front. She also stated that the appellant and Mr. Warden had been threatening them. Raymond Warden testified for the defense that he and the appellant owned the truck in partnership. He stated that he was with the appellant and Arlon Dale Ingram until about 7:00 p.m. on February 17, until the appellant took Mr. Warden to his mother's home. He stated that he spoke with the appellant on the telephone forty-five minutes later and saw him again the next morning around 7:00 a.m. Arlon Dale Ingram testified that on the evening of February 17, he left work at the Chapparal Bar and drove his own vehicle to the club where he met Warden and the appellant. He also stated that he could not remember when he last saw the appellant that night.

The appellant contends that the State's evidence was insubstantial because the evidence was circumstantial and the State's witnesses were not credible. We do not agree. Circumstantial evidence may constitute substantial evidence. *Summers v. State*, 300 Ark. 525, 780 S.W.2d 540 (1989). When circumstantial evidence alone is relied upon, it must indicate the accused' s guilt and exclude every other reasonable hypothesis. *Brown v. State*, 35 Ark. App. 156, 814 S.W.2d 918 (1991). Whether the evidence excludes every other reasonable hypothesis is for the fact finder to decide. *Id*. It is only when circumstantial

evidence leaves the jury solely to speculation and conjecture that it is insufficient as a matter of law. *Hutcherson* v. *State*, 34 Ark. App. 113, 806 S.W.2d 29 (1991).

■ Weighing the evidence, determining credibility, and resolving conflicts in the testimony are matters to be resolved by the fact finder. *Johnson* v. *State*, 26 Ark. App. 220, 762 S.W.2d 804 (1989). A jury may accept or reject any part of a witness's testimony, and its conclusion on credibility is binding on the appellate court. *Burris* v. *State*, 291 Ark. 157, 722 S.W.2d 858 (1987).

■ Given the testimony of the witnesses, and that the appellant's truck was identified as the truck carrying the same brand and size of the tires that were stolen, we believe the evidence is sufficient to support the convictions.

The appellant next argues that the buildings entered were not "occupiable structures" and therefore, the trial court erred by not finding as a matter of law that the appellant could not be found guilty of burglary.

We first address the issue of whether the attached supply room that was broken into is an occupiable structure under the burglary statute. Arkansas Code Annotated § 5-39-101 (1987) gives three definitions of an "occupiable structure" as a vehicle, building, or other structure:

> (A)   Where any person lives or carries on a business or other calling; or
>
> (B)   Where people assemble for purposes of business, government, education, religion, entertainment, or public transportation; or
>
> (C)   Which is customarily used for overnight accommodations of persons whether or not a person is actually present. Each unit of an occupiable structure divided into separately occupied units is itself an occupiable structure.

The appellant relies on *Julian* v. *State*, 298 Ark. 302, 767 S.W.2d 300 (1989) and *Barksdale* v. *State*, 262 Ark. 271, 555 S.W.2d 948 (1977) to support his argument that the buildings were not occupiable structures. However, in *Barksdale* and in *Julian*, the Court, in determining that the buildings entered were

"occupiable structures," based its decision upon the fact that the structures were buildings in which people assembled or stayed overnight. The Court in those cases did not address what constitutes a building or structure where a person carries on a business.

Several Arkansas cases have upheld burglary convictions based upon the illegal entry into business premises. *See, e.g., Hill* v. *State*, 261 Ark. 711, 551 S.W.2d 200 (1977) (building housing auto body shop at auto sales and body shop business was broken into); *Cristee* v. *State*, 25 Ark. App. 303, 757 S.W.2d 565 (1988) (defendant broke into office at lumber company); *Small* v. *State*, 5 Ark. App. 87, 632 S.W.2d 448 (1982) (tools stolen from a truck maintenance shop).

Mr. Wyse testified that the supply room was attached to the main warehouse structure although it could not be entered from inside the warehouse. It was used to store smaller tires and other items and had a locked gate covering its entrance. Mr. Wyse stated that although customers did not normally enter the supply room, he and the employees entered it as needed during the normal course of business.

We conclude that the attached supply room is an occupiable structure in that it is functionally interconnected with, and immediately contiguous to the main structure in which the Co-op carried on its business. Simple logic would suffer were we to hold that the supply room was somehow different from an office in a building or a body shop at an auto dealership because no inside entrance connected the two structures.

Furthermore, since we affirm the burglary conviction based on this finding, we do not need to reach the issue of whether the other open-ended structure is an occupiable structure.

We find no error, and affirm.

Affirmed.

JENNINGS, C.J., and PITTMAN, J., agree.