Houston WILLIAMS and Kathlene Williams *v.*
STATE of Arkansas

CA CR 94-894 927 S.W.2d 812

Court of Appeals of Arkansas
En Banc
Opinion delivered July 3, 1996
[Petition for rehearing denied August 14, 1996.*]

---

*Pittman, Stroud, and Griffen, JJ., would grant.

*Kent McLemore* and *Finch & Gartin*, by: *Jay T. Finch*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Deputy Att'y Gen. and Senior Appellate Advocate, for appellee.

JOHN E. JENNINGS, Chief Judge. Houston Williams and Kathlene Williams, husband and wife, were each convicted of conspiracy to deliver methamphetamine. They each appeal from their convictions. Houston Williams argues three points on appeal: (1) that the trial court erred in failing to grant his motion for directed verdict in that the evidence was insufficient because Henry

Glosemeyer and his wife Terry Glosemeyer were accomplices and their testimony was uncorroborated; (2) that the trial court erred in refusing to instruct the jury that Henry and Terry Glosemeyer were accomplices as a matter of law whose testimony must be corroborated; and (3) that the trial court erred in failing to grant appellants' motions to dismiss for double jeopardy. Kathlene Williams argues these same points, and also that the trial court erred in refusing to sever her trial from that of her husband; the court erred in refusing to grant a mistrial after the prosecutor referred to facts outside of the record; the court erred in preventing her cross-examination of Henry Glosemeyer; and the court erred in allowing evidence of her previous conviction for enhancement purposes at sentencing. We affirm as to both appellants on all issues.

## SUFFICIENCY OF THE EVIDENCE

We first address appellants' arguments concerning their motion for directed verdict, as they involve a challenge to the sufficiency of the evidence. *Goins v. State*, 318 Ark. 689, 890 S.W.2d 602 (1995); *Martin v. State*, 316 Ark. 715, 875 S.W.2d 81 (1994); *Coleman v. State*, 315 Ark. 610, 869 S.W.2d 713 (1994). The test for determining the sufficiency of the evidence is whether there is substantial evidence to support the verdict. Substantial evidence is evidence forceful enough to compel a conclusion one way or another without suspicion or conjecture. *Owens v. State*, 313 Ark. 520, 856 S.W.2d 288 (1993). In determining the sufficiency of the evidence, we review the proof in the light most favorable to the State, considering only that evidence which tends to support the verdict. *Gunter v. State*, 313 Ark. 504, 857 S.W.2d 156 (1993).

Viewed in the light most favorable to the State, the following evidence was presented at trial. Henry Glosemeyer testified that he and Terry Glosemeyer met Houston Williams and Kathlene Williams around Thanksgiving of 1991 when they were all working for a trucking company. Henry Glosemeyer was aware that the Williamses were behind in their house payments. He had a Mac Ten .9mm semi-automatic handgun that he wanted to get rid of, and he suggested that Houston Williams take the weapon to California and either sell it or trade it for drugs so that they could split the proceeds. Glosemeyer testified that Williams took the weapon to California and when he returned he gave Glosemeyer a quarter ounce of methamphetamine in return. Just before Christmas of 1991, the Williamses lost their job with the trucking company.

Glosemeyer testified that he and Terry continued to have contact with the Williamses, living out of a bedroom and staying at their residence just about every weekend when they came through. Glosemeyer testified that the Williamses would make trips to California to obtain drugs and were making their living collecting unemployment and dealing drugs. He testified that he and Terry used drugs at the Williams' residence. In April 1992, Henry and Terry Glosemeyer quit their job with the trucking company and moved into the Williams' residence full time, where they all did drugs regularly. He testified that they had numerous conversations about buying, selling, and using drugs. He testified that Houston Williams, sometimes accompanied by his wife Kathlene, would make a trip to California every four to six weeks to procure more drugs. On one trip, the Williamses took Henry Glosemeyer's personal pickup truck to California to procure drugs. Glosemeyer testified that Terry moved out of the Williams' residence in either June or July, but he continued to live there until September 1992. During the time he was living with the Williamses he saw people come to the house to talk to the Williamses about drugs. He testified that people came to the house and they all did drugs and there was constant conversation about selling drugs and that both Houston and Kathlene were part of the conversations. Henry Glosemeyer testified that even after he moved out of the Williams' house he continued to be involved with drugs and with the Williamses. In November of that year, Glosemeyer began to sell quantities of methamphetamine to another truck driver he knew. He testified that he got the drugs from Houston and gave the money to both Houston and Kathlene. Glosemeyer continued to sell drugs that he got from Houston Williams until February 22, 1993, when he was arrested leaving the Williams' house with two ounces of methamphetamine in his truck. After his arrest, Glosemeyer cooperated fully with the police and told them about the Williamses and his own role in the drug trade. He testified that before his arrest he had been waiting for Williams to return from a trip to California that he had made in Glosemeyer's truck, and that Williams had told Glosemeyer he was to pick up four pounds of methamphetamine in California. Glosemeyer testified that at this time "I was a major distributor for him."

Terry Glosemeyer testified about meeting the Williamses, moving in with them, and their collective drug use. She testified that they all used methamphetamine, but she never bought drugs

from Houston and Kathlene Williams. She testified that Henry did buy drugs from the Williamses and that she had witnessed Houston and Kathlene sell drugs to other people. Terry Glosemeyer testified that on one occasion she and Kathlene took some methamphetamine, mixed it with Inositol, and put it in bags. On another occasion, she testified that she counted between eight and ten thousand dollars in cash for Houston before a trip to California to buy drugs. She testified that after her husband was arrested on February 22, 1993, eight days later when he was out of jail they went to the Williams' house. Terry testified that she slept on the couch that night and when she woke in the morning, she heard conversations in the house between Houston Williams, Richie Dickson, and Ron Fox. They were discussing the location of methamphetamine that they had hidden. She believed the drugs they were talking about were the last shipment that Houston had brought in.

Detective Allen McCarty testified that he had been involved in an investigation of Houston and Kathlene Williams involving their distribution of methamphetamine. He first received information regarding Houston Williams in November 1992. He eventually interviewed a confidential informant named Fred Colvin. Colvin told him that a person living in West Fork named Houston Williams was making approximately three trips a month to California, was buying drugs, and bringing them back to northwest Arkansas for distribution. In February 1993, after receiving information from a detective with the Ninth Judicial Drug Task Force, McCarty and members of the Fourth Judicial Drug Task Force set up surveillance of the Williams' residence. They saw Henry Glosemeyer drive to the Williams' residence, and then leave. A few hours later a red pickup arrived at the residence driven by Glosemeyer. About 8:30 p.m., they observed the pickup leave the residence driven by Glosemeyer. The truck was stopped and Glosemeyer consented to a search, which produced two ounces of methamphetamine. After Glosemeyer's arrest, he indicated that he had gotten the drugs from Houston Williams.

 We hold that there was substantial evidence presented at trial to support the jury's verdict. Because the trial court ruled that Henry and Terry Glosemeyer were not accomplices as a matter of law, there was no requirement of corroborating evidence to send the case to the jury for deliberation. *See King v. State*, 323 Ark. 671,

916 S.W.2d 732 (1996). The trial court did not err in denying the appellants' motions for directed verdict.

## ACCOMPLICES AS A MATTER OF LAW

Both appellants contend that the trial court erred in not holding that both Henry and Terry Glosemeyer were accomplices to the conspiracy as a matter of law. We cannot agree. Arkansas Code Annotated section 5-2-403 provides, in part:

> A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, he...aids, agrees to aid, or attempts to aid the other person in planning or committing it.

█ In the case at bar the trial court gave AMCI 2d 403, which allowed the jury to determine whether the Glosemeyers were accomplices to the conspiracy and therefore whether corroboration was required. The "Note on Use" to AMCI 2d 403 states that the instruction should be given when an alleged accomplice has testified and the sufficiency of the corroborating evidence presents an issue of fact for the jury. The court should not instruct the jury that a certain witness is an accomplice if there is any dispute in the testimony upon that point. *Odom* v. *State*, 259 Ark. 429, 533 S.W.2d 514 (1976). Whether a witness is an accomplice is ordinarily a mixed question of law and fact, to be submitted to the jury. *Odom* v. *State, supra.* The problem here cannot be adequately understood without some discussion of the nature of the crime of conspiracy. Professor Lafave states:

> As courts have so often said, the agreement is the "essence" or "gist" of the crime of conspiracy.
>
> . . . .
>
> Because most conspiracies are clandestine in nature, the prosecution is seldom able to present direct evidence of the agreement. Courts have been sympathetic to this problem, and it is thus well established that the prosecution may "rely on inferences drawn from the course of conduct of the alleged conspirators." This notion has been traced to an oft-quoted instruction in an 1837 English case, where the judge told the jury: "If you find that these two persons pursued by

their acts the same object, often by the same means, one performing part of an act and the other another part of the same act, so as to complete it, with a view to the attainment of the object which they were pursuing, you will be at liberty to draw the conclusion that they have been engaged in a conspiracy to effect that object."

2 Wayne R. LaFave and Austin W. Scott Jr., *Substantive Criminal Law* § 6.4 (1986).

■ In the case at bar, the Williamses were charged with conspiring to deliver methamphetamine in northwest Arkansas. Although there was considerable evidence of criminal activity on their part, there was no direct evidence of the actual agreement between them. The jury in the case at bar was permitted to draw such an inference. Likewise, there is abundant evidence that the Glosemeyers were involved in all sorts of criminal activities with the Williamses, but again there is no direct evidence of their agreement in the charged conspiracy. If different inferences may reasonably be drawn from the proof regarding complicity, the question of accomplice status is one for the jury. *See* 75A Am. Jur. 2d *Trial* § 822 (1991). Our courts have repeatedly said that the drawing of inferences is for the trier of fact. *See Core* v. *State*, 265 Ark. 409, 578 S.W.2d 581 (1979); *Crow* v. *State*, 248 Ark. 1051, 455 S.W.2d 89 (1970); *Lewis* v. *State*, 7 Ark. App. 38, 644 S.W.2d 303 (1982).

■ While we agree that the jury could readily infer, in the case at bar, that the Glosemeyers were accomplices to the conspiracy, we cannot say the court erred in submitting the question to them.

### DOUBLE JEOPARDY

Prior to this trial on charges of conspiracy to distribute methamphetamine, both Houston and Kathlene Williams were convicted in a separate trial of possession of methamphetamine with intent to deliver. They argue that Ark. Code Ann. § 5-1-113 provides them with an affirmative defense to the second prosecution, and cite *Tackett* v. *State*, 294 Ark. 609, 745 S.W.2d 625 (1988), in support. They also argue that the doctrine of merger prohibits the second prosecution, citing *Elsey* v. *State*, 47 Ark. 572, 2 S.W. 337 (1886). Arkansas Code Annotated section 5-1-113 provides in pertinent part:

A former prosecution is an affirmative defense to a subsequent prosecution for a different offense under the following circumstances:

(1) The former prosecution resulted in...a conviction...and the subsequent prosecution is for:

. . . .

(B) An offense based on the same conduct, unless:

(i) The offense of which the defendant was formerly convicted...and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of the offenses is intended to prevent a substantially different harm or evil; or

(ii) The second offense was not consummated when the former trial began.

In *Tackett v. State*, 294 Ark. 609, 745 S.W.2d 625 (1988), the defendant was convicted of manslaughter in the death of one victim while a second victim of the same incident remained in a coma. After the second victim died, defendant's subsequent prosecution for her death was held not to be barred because the second offense was not consummated when the former trial began. In the case at bar, appellants argue that the charges in the first trial and the charges of conspiracy in the subsequent trial arose out of the same conduct, and the "not yet consummated" exception does not apply because all of the activities constituting the elements of the conspiracy charges had been consummated before the first trial began.

■ While accurate as far as it goes, appellants' argument overlooks the other exception, contained in subsection (1)(B)(i). The offense of possession with intent to deliver and the offense of conspiracy to distribute "each requires proof of a fact not required by the other and the law defining each of the offenses is intended to prevent a substantially different harm or evil." Arkansas Code Annotated section 5-1-110(a)(2) provides that when the same conduct of a defendant may establish more than one offense, the defendant may be prosecuted for each such offense but may not be convicted of more than one offense if one offense consists only of a conspiracy to commit the other. By allowing prosecution for both conspiracy and the underlying offense, this section does not merge the inchoate offense into the ultimate offense as was the law in *Elsey*

v. *State.* However, as the Original Commentary to this section of the Code illustrates, the use of the word "only" is significant. As the Commentary points out:

> [I]t restrict[s] application of the subsection in the conspiracy context to the situation where the consummated offense was the sole object of the conspiracy. If the defendant conspired to commit a continuing series of offenses, he may be convicted of both the conspiracy and a completed offense committed pursuant to the conspiracy. For example, the person who agrees with others to engage in the continuing sale and distribution of drugs may be convicted of both conspiracy and a completed drug sale.

We found this reasoning persuasive in *Lee* v. *State,* 27 Ark. App. 198, 770 S.W.2d 148 (1989), where we held that § 5-1-110 did not prohibit convictions for both delivery of a controlled substance and conspiracy to deliver. The same reasoning is applicable to the case before us. While in a sense both the offenses of possession of methamphetamine with intent to deliver and conspiracy to distribute methamphetamine may be based on the same conduct, each requires proof of a fact not required by the other; therefore the affirmative defense of § 5-1-113 does not apply. Nor does § 5-1-110 prevent conviction for both offenses, as the conspiracy that was the subject of the conviction in the case at bar was not only a conspiracy to commit the other offense of possession with intent to deliver on February 23, 1993, that was the subject of the prior conviction. The conspiracy was to engage in the continuing sale and distribution of methamphetamine over the course of more than a year. The appellants' conviction on the conspiracy charge did not violate the principle of double jeopardy.

## SEVERANCE

The remaining arguments are made solely by appellant Kathlene Williams. She argues that the trial court erred when it refused to sever her case from that of her husband, as the evidence against him was so much stronger than that against her.

■■ In order to preserve for appeal a trial court's denial of a motion to sever, the defendant must renew the motion at the close of all the evidence. Ark. R. Crim. P. 22.1(b). General renewals of motions, that do not make clear to the court the grounds relied upon, have been held insufficient to preserve the issue for

appeal. *See Goins* v. *State,* 318 Ark. 689, 890 S.W.2d 602 (1995); *Jacobs* v. *State,* 317 Ark. 454, 878 S.W.2d 734 (1994); *Wynn* v. *State,* 316 Ark. 414, 871 S.W.2d 593 (1994). In the case at bar, appellant's counsel stated to the court, "[I]n order to preserve my motion for severance I have to reurge it." Even if this is considered sufficient to preserve the issue, we recognize that the trial court has broad discretion in determining whether to grant or deny a motion to sever. *Rockett* v. *State,* 319 Ark. 335, 891 S.W.2d 366 (1995). While there may have been some disparity in the quantity and quality of evidence presented against the two appellants, there was evidence presented that went specifically to the conduct of Kathlene as well as to that of Houston. We note that the jury was appropriately instructed to consider the evidence for or against each of them separately, and to render verdicts accordingly. We find no abuse of discretion in refusal of the motion to sever.

### MOTION FOR MISTRIAL — PROSECUTOR'S CLOSING ARGUMENT

Appellant Kathlene Williams argues that the trial court erred in failing to grant a mistrial for some of the prosecutor's remarks made during closing argument. In referring to defense counsels' questioning of Henry Glosemeyer about his incentive to testify because of the charges pending against him, the prosecutor stated "you're looking at the person who makes that decision, and he doesn't know what's going to happen." Appellant's counsel objected to the prosecutor's referring to information not in evidence, and was overruled. Again, the prosecutor stated that Glosemeyer never testified what "deal" he had with the prosecutor, "because there ain't none." Again, the same objection was overruled. The prosecutor then referred to statements made by Fred Colvin, another defendant, implying that they may possibly have been induced to avoid the appellants "messing with his friends or messing with him." Appellant's counsel objected again on grounds that the prosecutor had argued facts not in evidence and asked that the jury be admonished not to consider the statements. The trial court responded that the jury had been instructed that arguments are not evidence. Counsel then asked for mistrial, which was denied.

Mistrial is an extreme remedy to which the court should resort only when there has been an error so prejudicial that justice cannot be served by continuing the trial. *King* v. *State,* 317

Ark. 293, 877 S.W.2d 583 (1994). Counsel are given leeway in closing argument to argue plausible inferences that can be drawn from the testimony, and the trial court has a wide latitude of discretion in controlling the arguments of counsel. *Littlepage* v. *State*, 314 Ark. 361, 863 S.W.2d 276 (1993). While the prosecutor's comments were outside of the evidence, the jury was instructed that closing arguments were not evidence. We will not overturn the trial court's ruling absent clear abuse, and we do not find such manifest abuse of discretion here.

## LIMITATION OF CROSS-EXAMINATION

Appellant Kathlene Williams argues that the trial court erred in disallowing her cross-examination of Henry Glosemeyer regarding "the extent to which his deal to testify favorably for the State might be motivated by what he faced if convicted." She argues that her cross-examination was attempting to show that he had ample motive to testify favorably for the State.

Glosemeyer testified that he had been in trouble for methamphetamine twice before, had been to prison, and did not want to go back. He indicated that in a prior case he had testified for the prosecution and had gotten probation. He testified that he was being prosecuted for possession with intent to deliver and faced the possibility of a life sentence. He acknowledged that his case had been continued a number of times for the purpose of seeing the outcome of appellants' trial. He admitted that he was "testifying in order to do as much as I can to help myself"; that there was "no doubt about the fact that I am seeking favorable consideration for my testimony[;] I want leniency"; and that "I will come in and say anything to prevent myself from sitting in that defense chair as long as its the truth."

When the prosecutor objected to appellant's counsel's attempt on cross-examination to ask more about the possible sentence Glosemeyer faced, counsel made an offer of proof in which he had Glosemeyer admit that thirty years in prison would deprive him of the opportunity to earn forty hours a week of minimum wage; that Glosemeyer did not want his child to have to visit him in prison; and that he did not want to be deprived of his freedom. The court indicated to counsel that the substance of the proffer was irrelevant, redundant, and repetitive. We agree. Glosemeyer's motives for testifying favorably for the State were clear, and appel-

lant has not shown how she was prejudiced by the court's curtailment of her repetitive cross-examination.

## ENHANCEMENT

 Appellant's final argument is that it was error for the court to allow evidence of her previous conviction for possession with intent to deliver for enhancement purposes at sentencing. She argues that as the two convictions arose from a single act it was fundamentally unfair to use one to enhance punishment for the other, citing *Tackett v. State*, 298 Ark. 20, 766 S.W.2d 410 (1989). In that case the supreme court held that enhancement of punishment was directed towards habitual offenders, and because Tackett was convicted on two manslaughter charges arising out of a single criminal act, there was nothing habitual about his conduct and it would contravene fundamental fairness to treat him as an habitual offender. In contrast, appellant was convicted of conspiracy to distribute methamphetamine as an ongoing course of conduct, with her prior conviction for possession with intent to deliver representing a single episode therein. We do not perceive the same fundamental unfairness in addressing her habitual conduct through use of enhancement.

Affirmed.

COOPER and MAYFIELD, JJ., agree.

PITTMAN, STROUD, and GRIFFEN, JJ., dissent.

WENDELL L. GRIFFEN, Judge, dissenting. I dissent from the result announced in the prevailing opinion and its underlying reasoning. It is statutory law that a felony conviction cannot rest on the uncorroborated testimony of an accomplice. Ark. Code Ann. § 16-89-111(e)(1)(1987). Arkansas law also holds that a person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, he aids, agrees to aid, or attempts to aid the other person. Ark. Code Ann. § 5-2-403(a)(2)(Repl. 1993). The Arkansas Model Jury Instructions provide for accomplice status to be determined either as a matter of law (AMCI 402), or by the jury as a matter of fact (AMCI 403). Futhermore, the law is clear that accomplice liability as a matter of law can exist in cases involving criminal conspiracy. *Strickland v. State*, 16 Ark. App. 293, 701 S.W.2d 127 (1985); *Shrader v. State*, 13 Ark. App. 17, 678 S.W.2d 777 (1984);

*Cate* v. *State*, 270 Ark. 972, 606 S.W.2d 764 (1980). In this case, both instructions were submitted by the parties, and the trial judge issued AMCI 403, thereby allowing the jury to determine the status of Henry and Terri Glosemeyer as accomplices to the conspiracy to distribute methamphetamine with Houston and Kathlene Williams.

Appellants argue that both Henry and Terri Glosemeyer should have been declared accomplices as a matter of law because they aided the appellants in their drug distributing enterprise, and if that argument is valid, then the testimony from both Henry and Terri Glosemeyer should have been corroborated by non-accomplice sources. Appellants are correct. Where the facts concerning one's status as an accomplice are in dispute, whether one is an accomplice is a jury question that plainly warrants giving AMCI 403. *Robinson v. State*, 11 Ark. App. 18, 665 S.W.2d 890 (1984). In order for one to be determined an accomplice as a matter of law, the evidence supporting that finding must be conclusive or indisputable. *Clements* v. *State*, 303 Ark. 319, 796 S.W.2d 839 (1990).

The proof concerning conduct by Henry Glosemeyer aiding the conspiracy to distribute methamphetamine is clear and undisputed. He provided a gun to Houston Williams so that it could be traded for drugs. He acted as a distributor of methamphetamine for Houston Williams for a period of time. Henry Glosemeyer also knowingly and willfully provided his truck so that Houston Williams could haul methamphetamine from California to Arkansas for distribution. These facts are conclusive proof that Henry Glosemeyer aided, agreed to aid, and attempted to aid a conspiracy to distribute methamphetamine.

Likewise, the evidence shows that Terri Glosemeyer knowingly financed her husband's involvement in the methamphetamine distribution enterprise with Houston Williams by giving her pay check to Henry Glosemeyer so that he could use the proceeds from it to purchase methamphetamine from Houston Williams for distribution. The undisputed proof is that Terri Glosemeyer did this over a period of several weeks. There was also undisputed proof that she willingly assisted in bagging methamphetamine for distribution with Kathlene Williams, and that she helped Houston Williams count money to be used for purchasing methamphetamine.

Thus, the proof that Henry and Terri Glosemeyer aided, agreed to aid, or attempted to aid Houston and Kathlene Williams

in a conspiracy to distribute methamphetamine was both plain and uncontroverted so as to be conclusive, thereby justifying the jury instruction that they were accomplices as a matter of law (AMCI 402). There is no proof otherwise that would have justified submitting the question of their accomplice status to the jury as an issue of fact.

In *Strickland* v. *State, supra,* we held that it was error for a trial court to fail to instruct on accomplice liability as a matter of law in a criminal conspiracy where the alleged accomplice invested money in a drug manufacturing scheme, but later took his money back. We decided that the "overt act" of paying the money was already complete so as to seal the fate of the alleged accomplice. Applying the clear holding of *Strickland* to the facts before us, it is obvious that any of the acts by either Henry or Terri Glosemeyer was sufficient to establish accomplice liability in the conspiracy based on the notion that the acts were aiding the conspiracy to distribute methamphetamine. Certainly the combined actions demonstrate an unmistakable pattern of complicity to the conspiracy.

It follows, therefore, that the conspiracy case against appellants cannot stand. Because both Glosemeyers should have been declared accomplices to the conspiracy as a matter of law, neither of them could provide the requisite corroborating testimony for the other in order to establish the felony charge of conspiracy to distribute methamphetamine. Ark. Code Ann. § 16-89-111(e)(1). The only other proof against appellants on the conspiracy charge came from police officers who obtained their information directly from the Glosemeyers or from Fred Colvin. Colvin was a co-conspirator who ironically was determined an accomplice as a matter of law by the trial court based solely on his affidavit at a suppression hearing that he had participated in the methamphetamine distribution enterprise with Houston Williams. Counsel for the State candidly admitted at oral argument that he was unable to explain why Terri Glosemeyer should not have been deemed an accomplice as a matter of law given that Colvin was declared to be one, and that there was no factual basis in the record for distinguishing their status. At any rate, it is clear that there is no corroborating testimony supporting the conspiracy charge in this record when one excludes the testimony from the Glosemeyers, Colvin, and the police officers whose only knowledge of the conspiracy consists of information received from the accomplices. Therefore, the convic-

tions should be reversed, and the case dismissed.

Although the prevailing opinion reasons that the trial court properly submitted the accomplice liability issue to the jury, neither that opinion nor the State has advanced a plausible explanation why we have a model jury instruction providing for declaration of accomplice liability as a matter of law (AMCI 402) if we are never to apply it to cases where proof of the conduct showing complicity in a conspiracy is conclusive. Conspiracy cases are not exempt from the requirement that testimony from an accomplice be corroborated by a non-accomplice, nor are they exempt from accomplice status being declared as a matter of law where proof of complicity is conclusive. I would, therefore, follow our clear holding in *Strickland, supra,* and reverse and dismiss this case.

I am authorized to state that Pittman and Stroud, JJ., join in this opinion.