Henry Silas KILLIAN *v.* STATE of Arkansas

CA CR 97-449                         959 S.W.2d 432

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered January 21, 1998

*Hough, Hough, & Hughes, P.A.*, by: *Stephen G. Hough*, for appellant.

*Winston Bryant*, Att'y Gen., by: *David R. Raupp*, Asst. Att'y Gen., for appellee.

JOHN B. ROBBINS, Chief Judge. Appellant Henry Silas Killian was convicted by a jury of being a felon in possession of a firearm. He was sentenced as an habitual offender to fifteen years in the Arkansas Department of Correction and fined $10,000.00. Mr. Killian now appeals, arguing only that the trial court erred in denying his motions for directed verdict. We affirm.

■ A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Durham v. State*, 320 Ark. 689, 899 S.W.2d 470 (1995). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Thomas v. State*, 312 Ark. 158, 847 S.W.2d 695 (1993). Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Lukach v. State*, 310 Ark. 119, 835 S.W.2d 852 (1992). In determining the sufficiency of the evidence, we review the proof in the light most favorable to the appellee, considering only that evidence which tends to support the verdict. *Brown v. State*, 309 Ark. 503, 832 S.W.2d 477 (1992).

Officer David Slaughter of the Fort Smith Police Department testified on behalf of the State. He stated that he was involved in the search of a house on March 26, 1996. Officer Slaughter believed that Mr. Killian and his wife lived in the house. During the search, Detective Frank Grill recovered a firearm that he had found beneath a stereo speaker. Mr. Killian was present when the search began, and Dana Marr (his girlfriend) arrived moments later. Nobody else was in the house during the search. When the gun was found, Mr. Killian told Officer Slaughter "that it needed to be hidden better or it wasn't hidden good enough or something

to that effect." On cross-examination, Officer Slaughter acknowledged that no fingerprint testing was conducted on the firearm.

Detective Grill testified that, during the search, he found a small caliber semi-automatic handgun under a stereo speaker. The speaker was located in a bedroom that had been converted into an entertainment room with a stereo, television set, and recliners. Detective Grill indicated that Mr. Killian was the only person present when the search commenced, but did not indicate in which part of the house Mr. Killian was situated.

Dana Marr testified on behalf of Mr. Killian, and she stated that Mr. Killian is her live-in boyfriend and the father of her infant child. Ms. Marr testified that the gun recovered by the police belonged to her, and that she purchased it from Carol Ann Ball for $40.00 in November 1995. Ms. Marr explained that, at the time she bought the gun, she had kicked Mr. Killian out of the house and needed protection from prowlers. She stated that she put the gun under the speaker immediately after buying it, and that it had been there until the day of the search. Ms. Marr indicated that she owned the house that was searched, and she denied hearing Mr. Killian tell the police that he should have hidden the gun better after it was seized.

Ms. Ball testified that she is a friend of Ms. Marr. She stated that she sold a gun to Ms. Marr for $40.00 in November 1995. She identified the gun that was admitted into evidence as the same gun that she had sold to Ms. Marr.

For reversal, Mr. Killian challenges the sufficiency of the evidence. Specifically, he contends that there was not substantial evidence to support the jury's finding that he was in possession of the gun at issue. Mr. Killian cites *Harper v. State*, 17 Ark. App. 237, 707 S.W.2d 332 (1986). In that case, the appellant had been convicted of being a felon in possession of a firearm after a gun was found in a house that was jointly occupied. We held that, when there is joint occupancy of a residence, additional factors must be proven linking the accused to the gun. *See Harper v. State*, *supra*. In the instant case, Mr. Killian lived in a house along with Ms. Marr, and he submits that there were no factors that linked him to possession of the seized pistol. He notes that the house

belonged to Ms. Marr, and he asserts that the only evidence as to ownership of the gun was Ms. Marr's testimony that she had bought it and hidden it under the speaker. Mr. Killian argues that the jury's verdict was based on speculation and conjecture.

We find that there was an additional factor that sufficiently linked Mr. Killian to possession of the gun. The testimony of Officer Slaughter, which the jury was entitled to believe, indicated that Mr. Killian told him that the gun should have been hidden better after it had been found by the police. True, this statement could have merely been a flippant remark or only an acknowledgment that Mr. Killian simply knew the gun was there. But the jury could also reasonably interpret the remark, as it did, and infer that Mr. Killian was admitting that the gun was under his control. Our courts have repeatedly said that the drawing of inferences is for the trier of fact. *Williams v. State*, 54 Ark. App. 271, 278 927 S.W.2d 812, 816 (1996). Although Ms. Marr testified at trial that the gun belonged to her, there was no evidence that she told this to the police on the day that Mr. Killian was arrested. Ms. Marr was clearly an interested witness in this case, and the jury was not obligated to give credence to her testimony. It is well settled that it is the jury's duty to assess the credibility of the witnesses, and this court is bound by the jury's conclusion as to a witness's credibility. *Winters v. State*, 41 Ark. App. 104, 848 S.W.2d 441 (1993). Mr. Killian linked himself with the gun when he told the police that it should have been hidden better. Therefore, we affirm his conviction for felon in possession of a firearm.

Affirmed.

BIRD, ROGERS, CRABTREE, and MEADS, JJ., agree.

ROAF, J., dissents.

ANDREE LAYTON ROAF, Judge, dissenting. I do not agree that this conviction should be affirmed. In order to convict Killian of being a felon in possession of a firearm, the State need not prove actual possession or ownership; constructive possession, which is the control or the right to control the contraband, is sufficient. *Knight v. State*, 51 Ark. App. 60, 908 S.W.2d 644

(1995). Constructive possession can be implied where the contraband was found immediately and exclusively accessible to the accused and subject to his control, *id.* However, where the conviction is based on joint occupancy of the premises where contraband is found, there must be some additional factor present linking the accused to the contraband. *Darrough v. State*, 322 Ark. 251, 908 S.W.2d 325 (1995). In joint-occupancy cases, the State must prove two elements: (1) that the accused exercised care, control, and management over the contraband; and (2) the accused knew that the matter possessed was contraband. *Id.*, (citing *Plotts v. State*, 297 Ark. 66, 759 S.W.2d 793 (1988)).

In the instant case, the only additional factor present is Killian's statement. For it to constitute substantial evidence, the jury would have to infer from the statement that Killian exercised control over the gun, not simply that he knew where it was hidden.

This is a stretch that I cannot make. The officer who allegedly heard the statement testified that he did not recall the exact words, and did not put the statement in his report, but recalled that Killian said that "it needed to be hidden better or wasn't hidden good enough or something to that effect."

The statement could have merely been a flippant remark or could have been an acknowledgment of sorts that Killian knew the gun was there. However, in a joint-occupancy case involving a firearm, knowledge that a gun is present does not carry the same import as knowledge that illegal drugs or other such contraband are present. Furthermore, people hide guns in their homes for good reasons, especially where children are present.

Of course, felons may not possess firearms. However, family members of felons may do so. By today's ruling, the majority, in effect, has narrowed the options for family members willing to take in a felon who has paid his debt to society, and for the convicted felon as well — give up the gun or expose the returning family member to the risk of further incarceration for simply knowing that there is a gun in the family home.