Gary HAMBLIN *v.* STATE of Arkansas

CR 80-33                                    597 S.W. 2d 589
Supreme Court of Arkansas
Opinion delivered April 28, 1980

*Barry J. Watkins,* for appellant.

*Steve Clark,* Atty. Gen., by: *Dennis R. Molock,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Chief Justice. Appellant Gary Hamblin was found guilty of carnal abuse in the first degree, sentenced to five years' imprisonment and fined $1,000. His appeal is based upon three grounds: (I) The alleged victim, Rosanna Marie Richardson (sometimes called Rosie and sometimes Marie) was incompetent to tesity; (II) The trial court erred in admitting a record of the motel registration into evidence; and (III) The court erred in denying appellant's motion to strike the testimony of Gordon Ostberg, the owner of the motel at which the offense allegedly occurred. We find no reversible error and affirm.

I

The alleged victim was Marie Richardson, who was 13

years of age at the time of the trial, which was about three months after the alleged offense. She had only completed the sixth grade in school.

Appellant's argument that this little girl was incompetent to testify is not based upon her capacity to understand the solemnity of an oath or to comprehend the obligation it imposes. Her qualifications in this respect were well established. Appellant does contend, however, that the trial judge abused his discretion in holding that Marie was qualified in the sense that she was able to receive and retain accurate impressions to the extent that, when testifying, she had the capacity to transmit to the jury a reasonable statement of what she had seen, felt or heard. Appellant bases his argument upon these facts: In response to a question by the trial judge, after having said that she lived with her mother in Springdale, she said that she did not know the address and later, on cross-examination, her admission that she was not living with her mother conflicted with her earlier answer. She answered that she did not know how long she had lived in Springdale. Although she testified that she knew what sexual intercourse was, she was unable to tell the court what it was until the key phrase "penis in your vagina," was implanted in her mind by a question asked by a deputy prosecuting attorney during an in camera hearing on the question of the competency of the witness; but, even though she was able to give the trial judge a statement about the alleged offense using the prosecutor's words, when she returned to the courtroom, she failed to respond to a question about the event in the same words, having said, "Well-uh, he stuck his penis in my — gavina, or whatever." There were 57 instances in which she failed to answer questions propounded to her, most of which concerned questions pertaining to what allegedly happened between her and appellant in a motel room and some of them were asked after the trial judge had questioned the witness in camera and in the absence of the attorneys for both sides.

If the facts relied upon by appellant were all the record disclosed, we might well agree with appellant that the trial judge had abused his discretion in holding that the witness was competent.

After Marie had failed to answer questions by a deputy prosecuting attorney, most of which called upon her to identify appellant or to tell what had happened after she had gone to a motel room with appellant, the trial judge questioned her. After she had failed to respond to inquiries by the trial judge about the meaning of the words sexual intercourse and about her being nervous or scared, the judge held the hearing in camera. At first, Marie either nodded her head affirmatively or failed to respond to questions by the trial judge, but she gave affirmative answers to questions by a deputy prosecuting attorney whether she knew what a penis was and what a vagina was and stated that "guys" had the former and "women" the latter. Thereafter, she again failed to give any response to the judge's questions as to what had happened, told the judge she could not answer the questions, and acknowledged that she remembered talking to the deputy prosecuting attorney and telling him the whole story and all details. She would not respond when asked why she could not again tell the details and whether she was afraid of appellant. She finally answered leading questions by saying that she was not answering questions because she was afraid of appellant, but that this was not the only reason; she was also embarrassed and shy. She then said that she could and would go back into the courtroom and answer the questions from the stand, but when she was asked by the trial judge to tell what happened in the motel room, after saying that she and appellant took off their clothes and got in bed, she hesitated until the judge persisted with the question and received the response that they had had intercourse, but she would not be more specific. After persistent questioning by a deputy prosecuting attorney, she gave an affirmative answer to the leading question, "Did he place his penis in your vagina?" Upon further inquiry by the trial judge, she again answered that she was afraid and that she did not want to testify. When the judge asked if she was bothered by too many people and she responded by nodding her head affirmatively, she agreed to tell the judge what happened, if everyone else except the court reporter left the room. When they did, she promptly told the judge that "he" stuck his penis in her vagina. When the judge inquired whether anyone had threatened her, she first failed to respond, but answered when the judge asked whether it was appellant or any of his friends, saying that

appellant and two others had told her on the night "this all happened" that they were going to kill her if she told anyone. She then promised that she would answer questions truthfully when they returned to the courtroom. The judge then called the attorneys back into his chambers, advised them what had occurred during their absence, ruled that the witness was competent and advised the attorneys that he felt that the witness was in fear but that she freely loosened up when not crowded by too many people. Thereafter, the witness responded rather readily to questions, although the trial court permitted several leading questions on direct examination. On cross-examination, Marie answered that she was living in a foster home in Alma and not really living with her mother in Springdale.

The trial court has broad discretionary powers in determining the competency of a witness and we do not reverse its ruling in the exercise of that discretion unless there is manifest error or a clear abuse has been demonstrated. *Williams* v. *State,* 257 Ark. 8, 513 S.W. 2d 793; *Allen* v. *State,* 253 Ark. 732, 488 S.W. 2d 712; *Ray* v. *State,* 251 Ark. 508, 473 S.W. 2d 161. We find no manifest error. In view of the immaturity of the witness, her shyness, the natural embarrassment of a young female to discuss an event of this nature in the presence of a number of people, most of whom were male, and her testimony about her fears because of threats she said had been made, we are unable to say that there was any abuse of discretion. In view of the seriousness of the crime and the necessity for testimony of the victim in order to avoid the possibility that an accused might escape punishment for a serious offense simply because of the victim's having been put in fear, the trial judge is to be commended for his patience and searching inquiry in making his determination.

The use of leading questions was permissible in this case, in the discretion of the trial judge. It is always in the sound discretion of the trial judge to permit a witness to be asked leading questions on direct examination. *Bullen* v. *State,* 156 Ark. 148, 245 S.W. 493. In cases involving very young females, who are alleged to have been victims of crimes of this nature, this court will not distrub the action of the trial judge in permitting leading questions to be asked by the prosecu-

tion, if it appeared to him to be necessary to elicit the truth, unless his discretion has been abused. *Crank* v. *State,* 165 Ark. 417, 264 S.W. 936. See also, *West* v. *State,* 209 Ark. 691, 192 S.W. 2d 135. The youth, timidity and ignorance of the witness are important factors militating against the finding of an abuse of discretion. *Murray* v. *State,* 151 Ark. 331, 236 S.W. 617.

## II

Appellant says that there was error in the admission of a Flamingo Motel registration card for Room 40 dated February 21, 1979, the date of the alleged offense, emphasizing the fact that this was the only evidence, other than that of the alleged victim, tending to connect him with the Flamingo Motel on that date. On appeal, appellant asserts these deficiencies: insufficiency of the foundation laid for the introduction of this exhibit; absence of any evidence that he had signed the card; absence of any testimony that either he or the victim were in the room for which the registration form was executed; lack of evidence of the identity of the person who gave the information shown on the exhibit; the handwriting on the exhibit being garbled as to prevent accurate reading of the surname of the purported registrant.

There is no contention here, and there was none in the trial court, that the exhibit itself was hearsay. There was no objection in the trial court based upon the failure of the state to identify the person furnishing the information on the card. We will not consider objections made for the first time on appeal. *Parker* v. *State,* 266 Ark. 13, 582 S.W. 2d 34 (1979). The objection made in the trial court was lack of relevancy. There is no merit in that objection unless there is merit in the further objection made in the trial court that there was no indication that appellant signed the exhibit.

At the outset, we should say that we do not agree with appellant as to the legibility of the handwritten name on the exhibit. The first name is plainly Gary. The surname could easily be read as Hamblin. It could possibly be read as Hanblin, but we do not think that this fact renders the trial judge's ruling on relevancy erroneous. Relevant evidence is

evidence having *any* tendency to make the existence of any fact that is of consequence more or less probable than it would be without the evidence. Ark. Stat. Ann. § 28-1001, Rule 401 (Repl. 1979). We do not reverse a ruling on relevancy unless we find an abuse of the trial court's discretion in the matter. *Arkansas Power & Light Co.* v. *Johnson,* 260 Ark. 237, 538 S.W. 2d 541; *Fulwider* v. *Woods,* 249 Ark. 776, 461 S.W. 2d 581; *Higdon* v. *State,* 213 Ark. 881, 213 S.W. 2d 621; *Turner* v. *State,* 192 Ark. 937, 96 S.W. 2d 455.

The alleged victim testified that she and appellant went to a room in the Flamingo Motel in Springdale and spent the night there. She said that there was one bed in the room and that the walls were green. Gordon Ostberg, the owner and manager of the motel, identified the exhibit as a registration slip from his motel. It bore the name Flamingo Motel in capital letters across the top. He stated that such a registration slip is filled out whenever a room is rented at the motel and that the procedure is for the party renting the room to fill out the upper part of the registration card, which includes the name and address of the registrant. He said that, when he found that it showed only one occupant, he went to the room and asked the occupant to pay an additional $2, plus tax, for the additional occupant, whom he described as a young lady with stringy hair and a speech impediment, which he described as a slurring of the speech. Ostberg said that a red four-door automobile was parked in front of the room. The registration card shows an alteration in that the figures $14.12 are superimposed over $12.36 as the total paid for the room.

The foundation for the admission of this exhibit was not deficient in the respects covered by appellant's objection. We are unable to say that the exhibit had no relevance.

### III

Relying upon Ark. Stat. Ann. § 28-1001, Rule 602 (Repl. 1979), appellant contends that Ostberg was incompetent because he was never shown to have personal knowledge of the matter about which he testified. Appellant says that Ostberg could not identify him or Miss Richardson and was

not even asked to do so, and that Ostberg never identified the room to which he went to collect the additional rent. Ostberg did not undertake to testify to facts about which he had no knowledge. His entire testimony purported to be the relation of facts that he knew, and there is no indication that he attempted to relate anything he did not know. While he did not say he went to Room 40, he did say that he went to *the* room when he noted that only one occupant was registered and he related actions there which had been related by Marie Richardson. There was sufficient circumstantial evidence for the jury to find that the room was Room 40.

Appellant did not abstract any motion to strike the testimony of this witness. The only motion we find is one made at the conclusion of the state's evidence and after appellant's motion for a directed verdict had been denied. The arguments made in support of this motion would certainly be appropriate considerations in weighing the evidence but would not make it inadmissible.

The motion to strike came late, having been made after the witness had left the stand and had been excused from the trial, without any objection having been made by appellant to this action. In those circumstances, the granting or denial of the motion lies entirely within the discretion of the trial judge. *Arkansas State Highway Com'n.* v. *Stallings,* 248 Ark. 1207, 455 S.W. 2d 874; *Phelan* v. *Bonham,* 9 Ark. 389. There could be no abuse of discretion under these circumstances, particularly when we find objections, earlier made by appellant, to be without merit.

The judgment is affirmed.