Ronald Dean CLARK *v.* STATE of Arkansas

CR 93-1034                                    870 S.W.2d 372

Supreme Court of Arkansas
Opinion delivered January 31, 1994

*Joe Kelly Hardin*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. Ronald Dean Clark was charged with three counts of class Y felony rape for his sexual exploits with three minor females: two sisters, ages five and four, and his one-year-old daughter. Clark appeals his conviction for rape of the five- and four-year-olds, contending that the evidence was insufficient to support the jury's verdict. He also appeals the convictions of rape and sexual misconduct with the one-year-old arguing that the trial court erred in not declaring a mistrial after the prosecutor repeatedly asked leading questions of the two older victims. We affirm.

During the jury trial, the five-year-old was questioned about her association with Clark and answered, "Ron hurt me." When asked if he had touched her, she said yes, but refused to show the court where he had touched her, other than to say it was in "a bad place."

The four-year-old testified after her sister, stating that, "Ron had put the screwdriver in my private part." She also declared that she had seen Ron stick the screwdriver, a nail, and his tongue

in her five-year-old sister's private part. She nodded "yes" when asked if she had seen his private parts and testified that she saw Clark stick a screwdriver and his tongue in her one-year-old sister's private part.

Dr. Joy Hill, a pediatrician at Arkansas Childrens Hospital, who had examined all three girls and was qualified as an expert in pediatrics, also testified for the State. She explained that she had found three abnormalities during her genital examination of the five-year-old, all of which are consistent with child abuse: (1) abnormal mound or rolled edge on her hymen; (2) an area of white in the middle of the hymen, appearing like an old scar; and (3) presence of chlamydia, a sexually transmitted disease. Although her physical examination results would not stand on their own as evidence of sexual abuse of the two younger girls, she did note some "non-specific findings" of a little bit more visible vessels on the posterior end of the four-year-old's hymen, which is unusual for a child of that age.

At the end of the State's case, Clark asked for a directed verdict as to each of the three counts of rape, contending that the evidence was insufficient to support each charge. The trial judge granted the motion for directed verdict as to the charge of rape of the one-year-old because there was no evidence of penetration, but submitted the issue of sexual misconduct with her to the jury.

Clark testified in his own defense denying the charges and presenting his negative test results for chlamydia, a sexually transmitted disease. To rebut his testimony, the State recalled Dr. Hill who, when asked whether an adult male who had chlamydia in June or July of 1992 would still have it in December of 1992 or January of 1993, responded that because chlamydia reacts well to treatment, any of a number of antibiotics, taken for some other infection, could have cleared it up.

The jury found Clark guilty of rape of the five- and four-year-old females and sexual misconduct with the one-year-old female, and sentenced him to two thirty-year terms of imprisonment on each of the rape charges, to be served consecutively, and six months on the misconduct charge to run concurrently.

*I. Failure to grant motion for directed verdict —*

*Sufficiency of the evidence*

We first address Clark's claim that the trial court erred in refusing to grant his requests for directed verdict as to the two counts of rape as it involves a challenge to the sufficiency of the evidence which must be considered prior to a review of trial errors. *Thomas* v. *State*, 312 Ark. 158, 847 S.W.2d 695 (1993). Since sufficiency of the evidence of the sexual misconduct charge has not been challenged, we will not address this issue.

Arkansas Code Annotated § 5-14-103 (Supp. 1993) defines rape as:

> (a) A person commits rape if he engages in sexual intercourse or deviate sexual activity with another person:

> (3) Who is less than fourteen (14) years of age. It is an affirmative defense to prosecution under this subdivision that the actor was not more than two (2) years older than the victim.

> The legislature has defined "deviate sexual activity" as:

> (A) The penetration, however slight, of the anus or mouth of one person by the penis of another; or

> (B) The penetration, however slight of the vagina or anus of one person by any body member of foreign instrument manipulated by another person.

Ark. Code Ann. § 5-14-101(1) (1987).

On appeal from the denial of a directed verdict, we view the evidence in the light most favorable to the party against whom the verdict is sought and affirm if there is any substantial evidence to support the verdict. *Davis* v. *State*, 308 Ark. 481, 825 S.W.2d 584 (1992); *Traylor* v. *State*, 304 Ark. 174, 801 S.W.2d 267 (1990). Substantial evidence has been defined as being of sufficient force and character to compel a conclusion one way or the other, forcing the mind to pass beyond suspicion or conjecture. *Davis, supra;*

*A. Sufficiency of evidence of rape of five-year-old.*

Reviewing the evidence that Clark raped the five-year-old female, we hold that the evidence was more than sufficient. The five-year-old specifically testified that "Ron hurt me" and that he touched her "in a bad place." She also indicated that Clark had touched her between her legs with his tongue. In addition, Dr. Hill's testimony revealed that the five-year-old had a healing scar and an abnormal mound or rolled edge on her hymen as well as chlamydia, a sexually transmitted disease, all of which are consistent with sexual abuse.

The four-year-old was more detailed in her testimony regarding Clark's rape of her five-year-old sister:

Q. Did you ever seem him touch [her]?

A. (Affirmative nod.)

Q. What did you see him do to [her]?

A. Sticked the screwdriver in her private part.

Q. And, is her private part the same place yours is?

A. Yes.

. . .

Q. When he touched [her], did he touch her with anything else?

A. Nail.

Q. And, where did he touch her with the nail?

A. (Witness points.)

Q. Did her ever touch her with any part of his body?

A. His tongue.

Q. Where did he put his tongue?

A. (Witness points.)

*B. Sufficiency of evidence of rape of four-year-old*

During her testimony, the five-year-old also discussed Clark's

rape of her four-year-old sister:

> Q. And, when you saw him touch [her], was it in a good or a bad place?
>
> A. Bad place.
>
> . . .
>
> Q.Did [she] have her clothes on?
>
> A. (negative nod)

In addition, the four-year-old described Clark's rape of her, explaining:

> Q. Did anything ever bad happen to you when you were living with Ron?
>
> A. (Affirmative nod.)
>
> Q. What happened to you?
>
> A. Sticked this screwdriver in my private part.

■ We have held that the testimony of the victim which shows penetration is enough for conviction. *Jackson* v. *State*, 290 Ark. 375, 720 S.W.2d 282 (1986). Although the victim's testimony need not be corroborated *Jackson, supra.*, we have the four- and five-year-old's testimony corroborating each other's testimony.

■ Clark makes much of the inconsistencies in the older girls' testimony regarding whether their clothing was on or off when he was allegedly raping them. Inconsistencies in the testimony are for the jury to resolve. *Curtis* v. *State*, 301 Ark. 208, 783 S.W.2d 47 (1990). Clearly, this evidence is sufficient to support the rape convictions.

## II. Leading child witnesses

Although Clark does not question the competency of the two minor victims to tell the truth, he claims error on the part of the trial court in refusing to declare a mistrial after the prosecutor repeatedly asked leading questions of the five- and four-year-olds.

During the course of the examination of the four-year-old witness concerning her rape, the rape of her five-year-old sister and

the sexual misconduct with her other sister, the following took place:

Q. Did your grandma tell you to tell the truth?

A. (Affirmative nod.)

Q. And, the other people that told you to come in here and talk today, did they tell you to tell the truth?

A. (Affirmative nod.)

Q. Is that what you're doing?

A. (Affirmative nod.)

Q. Have you told other people about what happened to you?

A. (Affirmative nod.)

Q. When Ron touched you with his tongue, you said that he touched your private part?

A. (Affirmative nod.)

Q. Did he touch the skin on your private part?

A. (Affirmative nod.)

MR. HARDIN: Your Honor, I'm going to object to leading the witness. May I approach the bench?

(THEREUPON, Counsel for the State and Defense approached the bench.)

MR. HARDIN: Your Honor, I've objected approximately ten times on her leading the witness, both of these minor witnesses. She's leading them in critical areas. Our objections have been overruled and at this time I think the proper ruling is a mistrial because she's basically testifying.

THE COURT: The motion for a mistrial is denied. The prosecution, you may lead this witness as this witness is a child four years old, she's reluctant to testify. She obviously is scared and it's difficult to communicate with her. For those reasons and because of her age, you may lead the witness.

■  Granted, the record reflects continual leading questions

propounded to the five- and four-year-old witnesses by the State. Yet, a mistrial is a drastic remedy to which the court should resort only when there has been an error so prejudicial that justice cannot be served by continuing the trial. *Friend* v. *State*, 315 Ark. 143, 865 S.W.2d 275 (1993). It should only be ordered when the fundamental fairness of the trial itself has been manifestly affected. *Furlough* v. *State*, 314 Ark. 146, 861 S.W.2d 297 (1993).

We have often said that if it appears necessary to lead a child witness to elicit the truth, we will affirm the trial judge's decision in allowing leading questions, absent an abuse of discretion. *Jackson* v. *State*, 290 Ark. 375, 720 S.W.2d 282 (1986); *Wallace* v. *State*, 177 Ark. 892, 9 S.W.2d 21 (1928). In cases involving very young females who are alleged to have been victims of sexual crimes, we will not disturb the action of the trial judge in permitting leading questions to be asked by the prosecution, if it appeared to the judge to be necessary to elicit the truth, unless his discretion has been abused. *Hamblin* v. *State*, 268 Ark. 497, 597 S.W.2d 589 (1980). The youth, ignorance, and timidity of the witness are important factors militating against the finding of abuse of discretion. *Id.*

In *Jackson, supra,* we examined the criteria for permitting the leading of a child witness and noted that our cases do not hold that a witness cannot testify below a certain age. We approve the procedure of leading child witnesses in rape cases because of (1) the seriousness of the crime, (2) the natural embarrassment of the witness about the incident, (3) the child's fear of being in a courtroom full of people, (4) the necessity of testimony from a victim, (5) threats toward victims from those perpetrators, and (6) to avoid the possibility that an accused might escape punishment for a serious offense merely because of the victim's reluctance to testify. *Id.*

Looking at the circumstances of the direct examinations of both young girls, we hold that the trial judge did not abuse his discretion in allowing leading questions to elicit their testimony because they had allegedly been the victims of an especially intrusive, violent crime and were having to describe the acts to a room of strangers as well as in front of the perpetrator. Given the ages of the victims, the nature of the crime, and the girls' timidity, we understand the necessity of asking leading questions of them, and we commend the trial court for its patience in searching for the

truth. *See Hamblin, supra.* Similarly, in *Jackson, supra*, the witnesses were only eight- and five-years old and answered by nodding their heads affirmatively or negatively or by saying "yes" or "no." Here, the minor children were much more articulate in their answers.

■ Simply put, Clark has failed to prove that such a prejudicial error occurred during his trial, and the court satisfactorily explained its reasons for permitting the leading questions:

> This is a child witness who is having a difficult time coping with the situation. I'm going to allow the State to lead the witness. The jury will take into consideration the questions are leading and give the testimony whatever weight the jury decides it should have. I request that you don't need to lead the witness any more than is absolutely necessary and don't lead on absolutely critical matters.

We have no hesitancy in holding that there was no error in allowing the prosecutor to repeatedly ask leading questions of the two child witnesses and for denying Clark's request for a mistrial.

Affirmed.