Robin Gail JOHNSON and James H. Johnson *v.*
STATE of Arkansas

CA CR 00-18 25 S.W.3d 445

Court of Appeals of Arkansas
Division I
Opinion delivered September 13, 2000

*George H. Stephens*, for appellant James H. Johnson.

*Richard R. Parker*, Public Defender, for appellant Robin Gail Johnson.

*Mark Pryor*, Att'y Gen., by: *Leslie Plowman Fisken*, Ass't Att'y Gen., and *James R. Gowen, Jr.*, Ass't Att'y Gen., for appellee.

WENDELL L. GRIFFEN, Judge. James Johnson and his wife, Robin Johnson, received a joint jury trial on charges relating to the sexual abuse of Robin's daughter. James was convicted of two counts of rape, two counts of sexual abuse, and terroristic threatening. Robin was convicted of permitting the abuse of a child. James argues the evidence was insufficient to sustain his convictions. Robin argues that the trial court erred by denying her motion to sever the trial, by allowing the State to elicit testimony from her daughter with leading questions, and by denying her motion to suppress statements made during her interview with police. We disagree, and affirm on all points.

On Sunday, January 10, 1999, Sheila Slaughter, a teacher at Eagle Heights Elementary School in Harrison, Arkansas, was working in her classroom when she heard a child crying. That child was Robin's then eight-year-old daughter, who told Slaughter that she was upset because her stepfather would not let her pray at the table. She also told Slaughter that her stepfather had molested her.

Slaughter relayed the information to the victim's teacher, Cindy Newton. Newton told Pam Jones, the school's counselor. Jones reported the suspected abuse. Rebecca Madden of the Arkansas State Police and Troy Holton of the Harrison Police Department conducted an investigation.

Detective Holton interviewed the victim, who informed him that her stepfather had sexually abused her. The victim also told Holton that she had informed her mother of the abuse, but her mother did not believe her. On January 15 Dr. Eric Spann examined the victim, and confirmed that she had been sexually abused, as recently as three months prior to the examination.

James was charged with two counts of rape under Arkansas Code Annotated section 5-14-103 (Repl. 1997), two counts of first-degree sexual abuse under Arkansas Code Annotated section 5-14-108 (Repl. 1997), and first-degree terroristic threatening under Arkansas Code Annotated section 5-13-301 (Repl. 1997). Robin was charged with permitting abuse of a child under Arkansas Code Annotated section 5-27-221 (Repl. 1997).

Robin filed a motion to sever the trial and a separate motion to suppress statements she made during her interview with police. The trial court conducted a hearing on both motions and denied these motions. Robin renewed her motion to sever after the jury panel had been sworn. The trial court again denied her motion.

During trial, Robin's attorney obtained a continuing objection to the leading questions the State asked in eliciting testimony from the victim. The court overruled these objections and allowed the State to ask leading questions. At the close of the State's evidence and at the close of all of the evidence, appellants moved for directed verdicts on the charges against them. James's counsel argued that the victim's testimony failed to establish that the incidents testified to by the victim occurred within the time alleged in the charges. The State moved to amend the charges contained in the affidavit to comport with the facts as testified to by the victim in court. The trial court allowed the amendment, over James's objection. James's counsel then asked for a directed verdict on the ground that the victim had not testified as to the conduct supporting the second sexual-abuse charge. The trial court denied James's motion.

Robin's counsel argued that the only evidence connecting Robin to the incidents were the inconsistent statements made by the victim. The trial court denied her motion for a directed verdict, noting that "the Court doesn't grant directed verdicts on the basis of inconsistency in the testimony."

A jury found both appellants guilty. James was sentenced to serve a total of fifty years in the Arkansas Department of Correction, and Robin was sentenced to serve six years.

## I. Appellant James Johnson

### A. Charges and Standard of Review

James was charged with rape for engaging in sexual intercourse with a child six years of age during the school year 1996-1997, and engaging in deviate sexual activity (oral sexual penetration) by forcible compulsion with a person younger than fourteen years old in early January 1999. He was also charged with first-degree sexual abuse for purposely engaging in acts of sexual touching or fondling of a girl less than eight years old during the school year 1997-1998; and for touching his mouth to the genitalia of a girl less than eight years old during the 1996-1997 school year. Finally, the State charged him with terroristic threatening for threatening to cause physical injury to the victim to prevent her from reporting the abuse.

A motion for a directed verdict is treated as a challenge to the sufficiency of the evidence. *See Killian v. State*, 60 Ark. App. 127, 128, 959 S.W.2d 432, 433 (1998). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, whether direct or circumstantial. *See id.*, 959 S.W.2d at 433. When reviewing a denial of a directed verdict, we will look at the evidence in the light most favorable to the State, considering only the evidence that supports the judgment or verdict. *See Darrough v. State*, 330 Ark. 808, 810, 957 S.W.2d, 707, 708 (1997); *Killian, supra* at 128, 959 S.W.2d at 433. We will affirm if there is substantial evidence to support a verdict. *See Ryan v. State*, 30 Ark. App. 196, 786 S.W.2d 835 (1990). Evidence is sufficient to support a verdict if it is forceful enough to compel a conclusion one

way or another. *See Hall v. State*, 315 Ark. 385, 868 S.W.2d 453 (1993).

## B. Witness Competency

James argues that the victim's testimony was insufficient to sustain his convictions for rape, first-degree sexual abuse, and terroristic threatening, because the trial court failed to follow the proper procedure to determine the competency of the witness, and because her testimony was inconsistent. He maintains that under *Harris v. State*, 238 Ark. 780, 384 S.W.2d 477 (1964), it is reversible error for the trial court to fail to exclude the testimony of a child witness where the inconsistencies and irreconcilable conflicts in the child's testimony bear on essential elements of the crimes and render the witness unable to transmit to the jurors in a reasonable, clear, and coherent manner what she saw, heard, and felt.

James implies that because the victim replied on eight different occasions that she could not remember what happened, she was an incompetent witness. However, he did not object to her competency at trial. Instead, the bases for his directed-verdict motion at trial were that the victim's testimony did not prove that the incidents happened in the time frame alleged in the charges, and that she did not testify as to conduct supporting the second charge of sexual abuse. He does not raise either of these arguments on appeal, and is bound by the nature and scope of the arguments he raised at trial. *See Harris v. State*, 320 Ark. 677, 899 S.W.2d 459 (1995). Therefore, we only address whether substantial evidence supports each of his convictions and hold that the trial court did not err in denying his motion for a directed verdict on each charge.

## C. Rape Charges

A person commits rape if he engages in sexual intercourse or deviate sexual activity with another person, not his spouse, who is less than fourteen years of age. *See* Ark. Code Ann. § 5-14-103(a)(4) (Repl. 1997). Sexual intercourse is defined as the "penetration, however slight, of the labia majora by a penis[.]" Ark. Code Ann. § 5-14-101(9) (Repl. 1997). Deviate sexual activity includes any act of sexual gratification involving the penetration,

however slight, of the mouth of one person by the penis of another. *See* Ark. Code Ann. § 5-14-101(1)(A) (Repl. 1997).

The victim testified that when she was six or seven years old and her family lived on Maple Street, "James and I were in bed together and he got on top of me. On that occasion he stuck his private in my private. This hurt me and I tried to get him to stop. He stopped a couple of minutes later after I was kicking around and told him to stop." She further testified that when she was eight, at their home on Chestnut street, her stepfather forced her to perform oral sex on him. She stated that "he put his private inside my mouth," and that "his private tasted slimy and gross." The jury found the victim's testimony to be credible, and we defer to the jury's determination on the matter of witness credibility. *See Williams v. State*, 338 Ark. 178, 992 S.W.2d 89 (1999). Further, a rape victim's testimony need not be corroborated. *See Sublett v. State*, 337 Ark. 374, 989 S.W.2d 910 (1999). Therefore, we hold that substantial evidence supports James's conviction on this charge, and the trial court did not err in denying appellant's motion for a directed verdict on this charge.

### D. Sexual Abuse — Count One

A person commits first-degree sexual abuse if he is eighteen years old or older, and engages in sexual contact with a person not his spouse who is less than fourteen years old. *See* Ark. Code Ann. § 5-14-108(a)(4)(Repl. 1997). Sexual contact includes "any act of sexual gratification involving the touching, directly or through the clothing, of the sex organs, or buttocks or anus of a person or the breast of a female." Ark. Code Ann. § 5-14-101(8)(Repl. 1997.)

The victim further testified that earlier the same day James forced her to perform oral sex on him, and he also fondled her. She stated that she, her two brothers, and James were riding home from her grandmother's house, where the children had been staying over Christmas break. She testified that James "stuck his hand in my panties and started touching my privates. He was rubbing the area between my legs in the truck." She stated that her brothers were unaware of what James was doing, because they were looking out the window at the road.

■ Again, based on our deference to the jury's determination on the matter of witness credibility, see *Williams v. State, supra,* and on the fact that a rape victim's testimony need not be corroborated, see *Sublett v. State, supra,* we hold that substantial evidence supports James's conviction on this charge, and that the trial court did not err in denying appellant's motion for a directed verdict on this charge.

## E. Terroristic Threatening

■ A person commits terroristic threatening under Arkansas law if "[w]ith the purpose of terrorizing another person, he threatens to cause physical injury . . . to another person[.]" Ark. Code Ann. § 5-13-301(b)(1) (Repl. 1997). That is, it must be the accused's "conscious object" to cause fright. *Knight v. State,* 25 Ark. App. 353, 758 S.W.2d 12 (1988). The victim testified that when the parties lived on Maple Street, when she was six or seven years old, James raped her. She testified that after he raped her, "he told me not to tell anyone or else he would beat me." She also testified that in January 1999, after the incident in which James forced her to perform oral sex on him, he "told me that if I told anybody else he'd beat me until my butt was all red and bloody." James testified, and denied threatening or molesting the victim in any way. We again defer to the jury's determination of witness credibility, and hold that substantial evidence supports appellant's conviction with respect to this charge.

## F. Sexual Abuse — Count Two

The second charge of first-degree sexual abuse arose from an alleged incident in which James orally touched his mouth to the victim's genitalia. The State conceded below that the victim did not directly testify as to the specific conduct alleged supporting the second charge of sexual abuse. In his motion for a directed verdict, James's counsel first argued to the trial court that her testimony did not establish conduct within the time frame alleged in the charge, but subsequently argued that *no* testimony was presented in this regard.[1]

---

[1] James does not argue the plain-error doctrine should apply. Further, our supreme court has recently reiterated its reluctance to adopt this doctrine. See *State v. Montague,* 341

The trial court indicated that it did not remember any testimony with regard to this charge. At that point, the following dialogue took place:

STATE: No, sir. There was no testimony of that but there was testimony as to sexual contact. And, Your Honor, the specific testimony about sexual contact covers the crime. The crime is sexual contact. Whether it is by mouth or by hand, it's still sexual contact. Now, we've met the burden of establishing by evidence in this case that there was an act of sexual contact.

JAMES'S COUNSEL: Your Honor, I think I understand what —

COURT: So you're not — the — even though the information says — talks about fondling by touching his mouth to the genitalia then that's not your allegation?

PROSECUTOR: It was my original allegation based on the affidavit, Your Honor. But at this time —

COURT: Well, I'm talking about in terms of the testimony in this case.

PROSECUTOR: What I'm — what I'm saying, Your Honor, is from the testimony the allegation is still sexual contact but now I'm relying on what she would testify today which was that he touched [her] genitalia with his hands, rubbing her vaginal area.

JAMES'S COUNSEL: Your Honor —

\*\*\*

PROSECUTOR: I could not get her to go into the oral touching.

\*\*\*

COURT: *And on count four, [what] you're saying is the fondling which occurred on some other occasion at some time undetermined?*

PROSECUTOR: *She wasn't specific about it, Your Honor. She did acknowledge that it happened on other occasions.*

| | |
|---|---|
| JAMES'S COUNSEL: | *Your Honor, I would just ask the court to grant my motion on that. I don't think that there was any testimony as far as the mouth touching genitalia that I know of* and I think that's the — |
| COURT: | Well — |
| PROSECUTOR: | *I concur in that she would not — she would not go there but what I'm saying is we provided testimony as to other acts of sexual contact* — |
| COURT: | Which says — |
| PROSECUTOR: | — which the law requires from us. |
| COURT: | The allegation there is engaged in sexual touching or — so anyway the motions will be denied then. |

(Emphasis added.)

Thus, the prosecution argued below that the victim's testimony, even though it excluded testimony regarding any specific incident in which James touched his mouth to her genitalia, supported the second charge of sexual abuse, because the victim testified that he touched her "private" on more than one occasion.

■ The obvious issue that arises from the denial of the motion for a directed verdict on this charge is whether James had proper notice of the alternative basis for the second sexual-abuse charge. It is axiomatic that due process requires that the defendant be provided sufficient notice of the precise criminal charges brought against him and that he must have adequate opportunity to prepare his defense. Moreover, our state constitution requires that a formal indictment or information be filed. *See* Ark. Const. art. 2 § 8; Ark. Const. amend. 21, § 1. However, by statute, the prosecuting attorney may amend an indictment as to matters of form, or may file a bill of particulars, but cannot amend an indictment so as to change the nature of the crime charged. *See* Ark. Code Ann. § 16-85-407 (Repl. 1997); *Harmon v. State*, 277 Ark. 265, 641 S.W.2d 21 (1982).

In *Harmon, supra*, the defendant was accused of capital felony murder with kidnapping as the underlying felony. On the day of the trial, the prosecutor amended the information to add robbery as an alternate felony. *Id.* at 269, 641 S.W.2d at 23. The *Harmon* court held that the nature of the charge was undoubtedly changed by the addition of robbery, because the defendant would be required to defend an essentially different charge of capital murder. *Id.* at 270,

641 S.W.2d at 24. However, in *Gillie v. State*, 305 Ark. 296, 808 S.W.2d 320 (1991), the supreme court found no error where the appellant had been charged with capital murder while attempting to commit the felony crime of robbery, and on the day of trial, the prosecution amended the charges to add the charge of aggravated robbery. The court reasoned that appellant's counsel stated he was aware from the outset that the capital felony charge was entwined with the aggravated-robbery charge, but neither objected that he had no time to prepare a defense, nor asked for a continuance. *Id.* at 304, 808 S.W.2d at 324.

 In this case, the State did not change the degree of the charge, or file an additional charge. Rather, the State contended that the victim's other testimony, in lieu of her testimony regarding the specific incident involving the oral penetration of her genitalia, was sufficient to support the second preexisting first-degree sexual-abuse charge. James undoubtedly had notice that his alleged conduct on more than one occasion supported a second sexual-abuse charge. He was charged with not one, but two, counts of first-degree sexual abuse. Under Arkansas Code Annotated section 16-85-403(a)(2) (Repl. 1997), the State is not required to allege the act or acts constituting the offense, unless the offense cannot be charged without doing so. It would seem that had the State not provided a statement of the acts constituting the charges, the victim's testimony that James had touched her genitals on more than one occasion would have been sufficient to sustain two counts of first-degree sexual abuse. Morever, in this case, the State argued essentially that the same conduct that supported the first charge, i.e., fondling the victim's genitalia, also supported the second charge. Therefore, although the State relied on different conduct than was cited in the information, *the State was not alleging an additional basis supporting a first-degree sexual abuse than had already been alleged.* Rather, the State simply alleged that similar conduct occurred on multiple occasions and supported more than one charge of sexual abuse.

 Moreover, although James objected to the amendment of the information regarding the timing of the incidents, he neither alleged prejudice below nor alleges prejudice on appeal resulting from the amendment of the information and the denial of the directed verdict on this charge. Even where it is clear that the amendment changes the *degree of the crime* (which was *not* the case

here), appellant must show he was prejudiced by the amendment. *See Holloway v. State*, 312 Ark. 306, 849 S.W.2d 473 (1993) (affirming where charge was amended from attempted rape to rape, where appellant failed to demonstrate prejudice). Our courts will not presume prejudice when a defendant fails to move for a continuance or claim surprise after he is put on notice that the State plans to amend an information. *Id.* For the above reasons, we find that the trial court did not err in allowing the State to amend the indictment.

With regard to the sufficiency of the evidence on the second sexual-abuse charge, the victim testified that appellant touched her genitals on more than one occasion. She testified as follows:

> Q. Okay. Now, [were] there other times that he's touched you?
> A. Yes.
> Q. Where did that take place?
> A. He —
> Q. Are there several different times?
> A. Yes.
> Q. Okay. Do you remember any specific other times that he touched you?
> A. Not exactly. Pretty much the same. One day he did the same thing and then the next day he'd do the same and then a different thing and then the same.
>
> ***
>
> A. *He would do it in my room or he'd do it in the car when no one was watching.* He would try to do it real fast and then if someone goes like that to look, he'd try to slip his hand away from me and drive again.
> Q. *Okay. So he'd reach in and touch you like you described he did around the ice storm, around Christmas?*
> A. *Yes.*
> Q. *He did that other times.*
> A. *Yes.*

(Emphasis added.)

As noted previously, sexual contact includes any act of sexual gratification involving the touching, directly or through the clothing, of the sex organs of a person. Ark. Code Ann. § 5-14-101(8)(Repl. 1997). Further, a rape victim's testimony need not be corroborated to support a conviction. *See Sublett v. State, supra.*

Therefore, we hold that the victim's testimony is sufficient to support the additional charge of first-degree sexual abuse, just as her testimony was sufficient to support the other charges against James in this case.

## II. Appellant Robin Johnson

### A. Motion to Sever

Robin filed a written motion to sever on July 8, 1999, and the trial court conducted a hearing on the matter on August 6, 1999. At the hearing, she argued that statements would be introduced in a joint trial that would not be otherwise admissible and that the inflammatory nature of the case against James would "taint" the case against her. The trial court denied the motion to sever, noting that the inflammatory nature of the charges against James would still be an issue even if she were to be tried separately. Robin renewed her motion for severance the day of the trial, after the jury panel had been sworn, but before *voir dire* took place. When she renewed her motion before *voir dire*, she argued that a joint trial would limit her peremptory strikes, would create the perception that she participated in a joint enterprise with her husband, and would make it difficult for the jury to segregate the confusing evidence with regard to the time frame of the alleged incidents.

We hold that Robin waived her challenge to the trial court's denial of her severance motion because she failed to renew the motion before or at the close of the evidence, as is required under Arkansas Rule of Criminal Procedure 22.1(b).[2] This rule provides: "If a defendant's pretrial motion for severance was overruled, he may renew the motion on the same grounds before or at the close of all of the evidence. Severance is waived by the failure to renew the motion."

Robin maintains on appeal that she renewed her motion before *voir dire* in order to present the issue to the trial court at the

---

[2] Had the trial been severed, the State would have presented the same evidence against Robin as it presented against both appellants in this case. Thus, even if Robin had properly preserved her argument for appeal, we would not be inclined to hold the trial judge abused his discretion in denying her motion to sever.

earliest opportunity, thus preserving the issue for appeal. However, that did not relieve her of the burden to renew her motion before or at the close of all of the evidence under Rule 22.1(b). In *Rockett v. State*, 319 Ark. 335, 891 S.W.2d 366 (1995), our supreme court held that appellant's severance argument was not preserved for appeal where appellant filed a pretrial motion the day of trial, and renewed his motion twice the day of the trial before and after *voir dire*, but failed to renew the motion thereafter. Moreover, in *Wynn v. State*, 316 Ark. 414, 871 S.W.2d 593 (1994), our supreme court held that a general renewal of all objections at the close of the case does not renew a motion for severance because such a motion does not make clear the grounds for severance. However, in this case, Robin failed to even make a general renewal before or at the close of the evidence. *See generally Brown v. State*, 315 Ark. 466, 869 S.W.2d 9 (1994) (finding severance argument not preserved for appeal where appellant moved for severance in a pretrial motion but never again raised the issue); *Gray v. State*, 327 Ark. 113, 937 S.W.2d 639 (1997) (finding severance argument not preserved for appeal where appellant moved for severance in a pretrial motion but never again raised the issue). *Compare Bunn v. State*, 320 Ark. 516, 898 S.W.2d 450 (1995) (stating appellant complied with Rule 22.1(b) where he renewed his motion to sever at the close of the State's case-in-chief and at the end of his case). Based on these authorities, we affirm the trial court's denial of appellant's motion to sever.

## B. Leading Questions

Robin also argues that the trial court erred in permitting the State to ask leading questions of the victim. She maintains that she "was prejudiced by this testimony because of the time period it establishes and the grossness of the behavior it describes by James Johnson against the victim, thus inflaming the jury." With regard to the time frame, Robin maintains that "linking the oral sex to a date certain, January 1999, by the means of leading questions brought the abuse into the time period 1996–1999, in which appellant was charged; and, [*sic*] prejudiced in this regard." In other words, she argues the trial court erred in allowing the State to use leading questions to elicit testimony that incriminated her.

Robin points to two specific instances where the State used leading questions. The first instance regards testimony about an incident immediately following the incident where James rubbed the victim's vagina in the presence of her two brothers while the four of them rode home in the family truck.

Q. Now, when you got home, what did he do?
A. I can't remember what he did when I got home.
Q. Okay. Let me just ask you this. Do you remember telling people that when you got home that you went into your room and [James] followed you in?
A. Yes.
Q. When he followed you in, what did he do?
A. I can't remember.
Q. Now, you've told me about this before. Do you remember telling me about it.
A. Yeah, but I can't remember what I said.
Q. Okay. Well, now you don't have to remember the words you said. Can you just tell us what you remember happening?
A. I went in my room to put my toy up that my grandma gave me.
Q. Uh-huh.
A. That Grandma Mary gave me and he followed me in the room.
Q. And then what happened.
A. I can't remember.
Q. Okay. Did something similar happen to what happened at Mr. Foster's house happen?
A. Yeah.
Q. Okay, can you tell us about it?
A. I can't remember.
Q. Now . . . let me ask you this then. He followed you in, do you remember that he closed the door?
A. Yes.
Q. Okay. And then do you remember he asked you to do something?
A. Yes.
Q. What did he ask you to do?
A. I can't remember.
Q. Okay. Amber, do you remember telling people what he said?
A. Yes.
Q. When you were talking to the teacher and then when you were talking to Ms. Madden and Officer Holton, the police officer —
A. Yes.
Q. — do you remember what you told them?

A. Yes. He told me that if I told anybody else he'll beat me until my — until my butt is all red and bloody.

Q. Okay. So he threatened to beat you?

A. Yes.

Q. But didn't he tell you that after he did something to you?

A. Yeah, but I can't remember what he did.

Q. Okay. Amber, do you remember that time anything about him putting his private in your mouth.

At this point, Robin objected that the victim had stated four times that she could not remember what happened in her bedroom. After several more attempts to elicit testimony about the bedroom incident, the following exchange occurred, in which appellant maintains that the State virtually testified for the victim.

Q. Okay. Let me ask you this. Was this the time you told me about what things tasted like?

A. Yes.

Q. Now, what was it that tasted? How did it taste?

A. His private and it tasted slimy and gross like.

Q. And you tasted it that day, is that right?

A. Yes.

Q. And it was his private part that you tasted?

A. Yes.

Q. And —

At this point Robin's counsel asked the court to note her continuing objection, and the court so noted.

Q. How did — what you remember about how you came to taste his private part?

A. I don't understand the question.

Q. Okay. Amber, what part of you touched him or what part of him touched you?

A. His private.

Q. And where did it touch?

A. I can't —

Q. Well, you don't remember what part of you he touched with his private?

A. I think it was my private, but I also think it was my mouth, but I can't —

Q. So you think it was your mouth and you think he also touched your private?

A. Yeah.

Q. Okay. If you think it was your mouth, did he put his private inside your mouth?
A. Yes.
Q. Now, is that how you tasted it?
A. Yes.

■■ ■■ Leading questions are allowed under Arkansas law where the witness is a very young victim of sexual crimes and if it appears to the trial judge that such questions are necessary to elicit the testimony. *See Clark v. State*, 315 Ark. 602, 870 S.W.2d 372 (1994). Our courts allow leading questions in such cases due to the seriousness of the crime, the natural embarrassment of the witness, the child's fear of testifying in a courtroom full of people, the necessity of the testimony from the victim, the threats towards victims by the perpetrators, and to avoid the possibility than an accused might escape punishment simply because of the victim's reluctance to testify. *Id.* at 609, 870 S.W.2d at 376. The appellate court will not reverse the trial court's decision to allow leading questions absent abuse of discretion. *See id.; Jackson v. State*, 290 Ark. 375, 720 S.W.2d 282 (1986). The youth, ignorance, and timidity of the witnesses are important factors that militate against the finding of an abuse of discretion. *See Clark v. State, supra; Jackson v. State*, 290 Ark. 375, 870 S.W.2d 372 (1994).

■■ We hold that the trial court did not abuse its discretion in allowing the State to use leading questions in this case. The victim was as young as six years when the abuse occurred, and was nine years old at the time of the trial. She was understandably reluctant to answer embarrassing questions regarding specific acts of sexual abuse by James. The record shows a repeated pattern of the victim stating that she could not remember when asked what happened in general terms, but then providing detailed responses to specific questions. Moreover, she appeared unfamiliar with the proper terminology needed to describe James's actions to the jury. For example, she referred to both male and female genitalia as "privates."

In addition, the victim stated several times that she remembered telling her teachers, the police, and the prosecutor about the abuse but admitted that she was having trouble remembering the details on the day of the trial. She stated, "It's confusing because he did other things to me other times." Another time she stated, "You are asking me to remember too much." However,

Robin never challenged her competency as a witness. It appears from the record that the prosecutor's questions were necessary to elicit the testimony from the victim, and that the prosecution did not, as Robin contends, "virtually testify" for the victim. We hold that the trial court did not abuse its discretion in allowing the prosecution to use leading questions in this case.

## C. Motion to Suppress

Finally, Robin argues that the trial court erred in denying her motion to suppress her custodial statement. In reviewing a trial court's ruling on a motion to suppress, we make an independent determination based on the totality of the circumstances. *Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998); *Burris v. State*, 330 Ark. 66, 954 S.W.2d 209 (1997); *Wofford v. State*, 330 Ark. 8, 952 S.W.2d 646 (1997); *Hale v. State*, 61 Ark. App. 105, 968 S.W.2d 627 (1998); *Holmes v. State*, 39 Ark. App. 94, 839 S.W.2d 226 (1992). When the trial court denies a defendant's motion to suppress, we will reverse only if, in viewing the matter in the light most favorable to the State, the trial court's ruling is clearly against the preponderance of the evidence. *Travis, supra; Burris, supra; Wofford, supra.*

Robin sought the suppression of two statements. Officer Holton called Robin at work and asked her to come to the police department because of an emergency. Robin stated that she assumed that one of her sons was in trouble. She testified that when she walked into the interview room and saw Madden, Robin recognized her from a previous investigation of sexual abuse involving her children, and she said, "God, not again." After this statement, but before Robin's second statement, Officer Holton advised Robin of her *Miranda* rights, and Robin indicated that she understood each of the rights. After Holton advised Robin of her rights, he asked her if she knew why she was being interviewed. She stated that she knew why she was there. She stated that she did not believe her daughter, because her daughter would kiss and hug James and sit on his lap. At that point, Robin requested an attorney and Holton terminated the interview. He testified that the interview lasted ten to fifteen minutes.

We hold that the trial court did not err in denying appellant's motion to suppress the statement, "God, not again." It

is clear that this statement was a spontaneous statement. Robin made this statement, according to her testimony at the suppression hearing, when she walked into the room and recognized Madden, before any questioning had begun. Because the statement was spontaneous, it is irrelevant whether the statement was made before or after *Miranda* warnings had been issued, and whether Robin was in custody at that point. *See Stone v. State*, 321 Ark. 46, 900 S.W.2d 515 (1995).

With regard to Robin's statement that she did not believe her daughter, the State contends that although Holton had read Robin her *Miranda* rights, she was not in custody at that time, so the trial court properly refused to suppress this statement because it was not a custodial statement to which *Miranda* protections are afforded. *See Wofford v. State*, 330 Ark. 8, 952 S.W.2d 646 (1997). We do not address whether Robin was in custody because we hold that even if she was in custody, she made a knowing, voluntary, and intelligent waiver of her right to remain silent.

 A person knowingly and intelligently waives his rights if he does so with the full awareness of both the right being abandoned and the consequences of the decision to abandon it. *See, e.g.*, *Rankin v. State*, 338 Ark. 723, 1 S.W.3d 14 (1999). A custodial confession is presumptively involuntary, and the State has the burden to show that the confession was voluntarily made. *See Davis v. State*, 330 Ark. 76, 953 S.W.2d 559 (1997). Our supreme court has explained the voluntariness requirement as follows:

> A statement is voluntary if it is the product of a free and deliberate choice rather than intimidation, coercion, or deception. In making this determination, we review the totality of the circumstances, and reverse the trial court only if its decision is clearly erroneous. Relevant factors include the age, education, and intelligence of the accused; the lack of advice as to his constitutional rights; the length of detention; the repeated and prolonged nature of questioning; and the use of mental or physical punishment. Two other pertinent factors are the statements made by the interrogating officers and the vulnerability of the defendant.

*Conner v. State*, 334 Ark. 457, 467, 982 S.W.2d 655, 660 (1998) (citations omitted).

We hold that Robin made a knowing, voluntary, and intelligent waiver of her *Miranda* rights. She was called to come down to

the station because of an emergency, and went voluntarily; the police did not bring her into the station. When Robin entered the interview room, she recognized Madden from a prior instance in which the police had investigated reports of sexual abuse on her daughter and one of her sons. Thus, this was the second time Robin had been interviewed concerning the possible sexual abuse of her daughter.

Robin was thirty-one years old at the time of the interview, and she indicated on the *Miranda* form that she had completed two years of college. She signed the form indicating she understood her rights and verbally confirmed to Officer Holton that she understood her rights. She does not allege that she was coerced, but argues that she was not aware of the rights she was abandoning, because she was not aware that she was a suspect for permitting abuse of a child.

Her argument is not persuasive. First, as previously noted, she had been through this investigatory process before. Whether she knew she was a suspect, and even if she assumed she was being questioned related to possible charges against her husband, by signing the *Miranda* form and verbally stating that she understood her rights, Robin affirmed that she understood that subsequent statements she made could be used to prosecute *her*. Second, she cites no authority for the proposition that a defendant must be aware that he is a suspect of a specific crime, and must be aware of the specific nature of the possible charges against him, in order to make a voluntary, knowing, and intelligent waiver of his *Miranda* rights. We do not hear arguments on appeal that are not supported by authority and where it is not apparent, without further research, that the arguments are well-taken. *Hodges v. Lamora*, 337 Ark. 470, 989 S.W.2d 530 (1999); *Gnas v. Burger & Assocs., Inc.*, 295 Ark. 569, 750 S.W.2d 58 (1988).

Based on the above authorities and the totality of the circumstances in this case, we hold that even if Robin was in custody, she made a knowing, intelligent, and voluntary waiver of her *Miranda* rights. Therefore, we hold the trial court did not err in denying Robin's motion to suppress her statement that she did not believe her daughter.

Based on the foregoing arguments and authorities, we affirm each of the appellants' convictions.

Affirmed.

BIRD and NEAL, JJ., agree.